IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

MICHAEL WILLIAM BOLAND and
JANET L. BOLAND, on behalf of
Themselves and all others similarly
situated,

APR   4 2008
adc

vs.

DELHAIZE AMERICA INC., a North Carolina
corporation;
HANNAFORD BROS. CO.,
a Maine corporation;
KASH 'N' KARRY FOOD STORES, INC.,
d/b/a SWEETBAY SUPERMARKET and
SWEETBAY LIQUORS, a Delaware
corporation,

     Defendants.

_____/

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND INCORPORATED MEMORANDUM OF LAW**

## I.    INTRODUCTION

Plaintiffs Michael William Boland and Janet L. Boland, on behalf of themselves and all

others similarly situated throughout the United States, pursuant to Rule 1.220(b)(1)(A), (b)(2), and/or

(b)(3) of the Florida Rules of Civil Procedure, hereby seek certification of a class (hereinafter "Class

Members") against Defendants, Delhaize America, Inc., Hannaford Bros. Co., and Kash 'N' Karry

Food Stores, d/b/a Sweetbay Supermarket and Sweetbay Liquors, of all individuals who have used

a credit or a debit card to complete a purchase at Defendants' retail stores throughout the United

States and whose privacy rights were violated as a result of such purchase. The Court should certify

the above defined Class for the reasons set forth below.

## II.   PRELIMINARY STATEMENT

Class actions serve three essential purposes:

(1) to facilitate judicial economy by the avoidance of multiple suits on the same subject matter; (2) to provide a feasible means for asserting the rights of those who would have no realistic day in court if a class action were not available; and (3) to deter inconsistent results, assuring a uniform, singular determination of rights and liabilities.

*Singer, et al. v. AT&T Corp.*, 185 F.R.D. 681, 684-685 (S.D. Fla. 1998). *See also*, *Tenney v. City of Miami Beach*, 11 So.2d 188, 189 (Fla. 1942) ("[t]he very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist."); *Johnson v. Plantation General Hospital Limited Partnership*, 641 So.2d 58, 60 (Fla. 1994) (noting that "the purpose of the class action is to provide litigants who share common questions of law and fact with an economically viable means of addressing their needs in court"). *See also*, *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir. 1986) (asserting that the purpose of the class action is to preserve the resources of both the courts and the parties by allowing the economic litigation of issues that affect potentially every class member).

A class action affords an indispensable mechanism for the conservation of judicial resources by providing a single forum in which to litigate similar claims. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) (noting that individual actions by each of the potential class members would be repetitive, wasteful, and an extraordinary burden on the courts). Therefore, the interests of justice require that any doubts should be resolved in favor of class certification. *See Singer*, 185 F.R.D. at 685.

Since a class action is a procedural tool and not a matter of substantive law, <u>it is not proper to examine the merits of the case</u> when evaluating a motion for class certification:

> In determining the propriety of a class action, the question is not whether plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirement of Rule 23 are met...[the court has no] authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974) (citation omitted). *See also,* Herbert B. Newberg & Alba Conte, 1 *Newberg on Class Actions* § 3.29, at 3-149 (3d ed. 1992) (noting that on a motion for class certification, the named plaintiff need not show the probability of success on the merits); *Garner, et al. v. Healy, et al.*, 184 F.R.D. 598, 599 (E.D. Ill. 1999) (when considering a motion for class certification, the court accepts as true all well pleaded factual allegations). This is especially true in light of the requirement of Rule 1.220(d) of the Florida Rules of Civil Procedure that the determination of suitability for class treatment should occur "as soon as practicable after service of any pleading alleging the existence of a class."

Although the Court is not to resolve the merits of the dispute in determining the propriety of class certification, it must understand the nature and extent of the claims sought to be certified. It is for that reason that Plaintiff discusses the allegations and facts, to show the issues that will be the predominant focus of discovery and trial, to show that there are issues common to all members of the proposed Class, and to demonstrate that they are provable on a class-wide basis through common evidence of misconduct.

## III.   FACTUAL BACKGROUND

This case is tailor-made for class certification because common issues predominate and because Defendants have acted on grounds that are generally applicable to the Class Members.

3

Defendant Hannaford Bros. Co. is a supermarket chain with store locations all over the United States, many of which stores are located in Florida. Complaint at ¶ 12. Hannaford is a wholly-owned subsidiary of Delhaize America Inc., and for a numbers of years has been keeping credit and debit card data of customers of Hannaford, Kash 'N' Karry, Sweetbay, and Sweetbay Liquors. Complaint at ¶ 13. On or about March 17, 2008, Hannaford reported that up to 4.2 million credit and debit card numbers and expiration dates have been exposed to identity theft as a result of a security breach. Complaint at ¶ 14.

Carol Eleazer, vice-president of Hannaford, has stated publically that the company's investigators discovered that the breach began on December 7, 2008, and it was not allegedly contained until March 10, 2008. Complaint at ¶ 16. According to Hannaford's own press release, nearly 2,000 cases of fraud have been linked to the breach. Complaint at ¶ 17.

Plaintiffs used their credit cards to purchase items from Hannaford's Sweetbay stores in Hillsborough County, Florida on numerous occasions in 2007 and 2008. Complaint at ¶ 18. As a result of Plaintiffs' usage of their credit cards and Defendant's storage of Plaintiffs' credit card information, Plaintiffs' right to privacy has been violated. Complaint at ¶ 19. Furthermore, Defendants' failure to sufficiently protect the credit and debit card information of its customers resulted in third parties obtaining said information. Complaint at ¶ 20. Plaintiffs did not consent at any time to Defendants keeping or disseminating their personal credit card or other financial information. Complaint at ¶ 21. As a result of Defendants' conduct, Plaintiffs allege invasion of privacy, negligence in failure to protect customers' credit card information, and breach of implied contract.

## IV.   THE PREREQUISITES TO CLASS CERTIFICATION ARE SATISFIED

Rule 1.220 of the Florida Rules of Civil Procedure outlines the prerequisites for maintenance of a class action and is based on Federal Rule of Civil Procedure 23, the federal class action rule. Certification of a class action is proper where the movant satisfies the four requirements of Rule 1.220(a) and at least one of the conditions under Rule 1.220(b). As discussed below, Plaintiff has satisfied all the prerequisites of Rule 1.220(a) and have met the conditions under either Rule 1.220(b)(1)(A), (b)(2), and (b)(3). Therefore, class certification is proper in this case.

## V.   THE RULE 1.220(a) PREREQUISITES ARE SATISFIED

As discussed in greater detail below, Plaintiffs have satisfied all of the procedural prerequisites of Rule 1.220(a): Numerosity, Commonality, Typicality and Adequacy.

### A.   Numerosity

The proposed class must be so numerous that "joinder of all members is impracticable." Fla. R. Civ. P. 1.220(a)(1). "The plaintiffs generally must proffer some evidence or reasonable estimate of the number of members comprising the purported class." *In re Disposable Contact Lens Antitrust Litigation*, 170 F.R.D. 524, 529 (M.D. Fla. 1996). However, "a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Company*, 696 F.2d 925, 930 (11th Cir. 1983). Further, there are no minimum or maximum requirements regarding the size of the class. *See Singer*, 185 F.R.D. at 687 (asserting that there is no definitive standard regarding the size that the class must attain to satisfy section (a)(1) but noting that numerosity has been satisfied in a class consisting of 25 to 75 class members). "A close question should be resolved in favor of a finding of numerosity." *Id*.

The Class consists of thousands and possibly millions of individuals who have used a credit or a debit card to complete a purchase at Defendants' retail stores throughout the United States and whose privacy rights were violated as a result of such purchase. Complaint at ¶ 23.  Although the number of Class Members cannot be precisely determined without discovery, Plaintiffs are informed and believe that the class consists of a significant number which easily satisfies the numerosity requirement. Complaint at ¶ 24.

**B.     Commonality**

Commonality exists where "there are questions of law or fact common to the class." Fla. R.Civ.P.1.220(a)(2). The threshold of commonality is not high and the rule requires that resolution of the common questions affect only "a substantial number of the class members." *Broin, et al. v. Philip Morris Companies, Inc., et al.*, 641 So.2d 888, 890 (Fla. 3d DCA 1994).  Further, <u>complete identity of legal claims or facts is not required</u>.  Instead, section (a)(2) is satisfied if "all class members are in a 'substantially identical factual situation' and the questions of law raised by the plaintiff are applicable to each class member." *In re Contact Lens Litigation*, 170 F.R.D. at 529 (quoting *In re Amerifirst Securities Litigation*, 139 F.R.D. 423, 428 (S.D. Fla. 1991)). *See also*, *Armstead v. Pingree*, 629 F.Supp. 273, 280 (M.D. Fla. 1986) (noting that certification will not be denied because of factual variations).

Florida Courts have readily found commonality existed in cases involving the interpretation of identical or substantially similar contract provisions. <u>Love v. General Development Corp.</u>, 555 So.2d 397 (Fla. 3rd DCA 1989). In <u>Love</u> owners of individual homesites in planned residential communities sued the developer for breaching purchase agreements by failing to complete roads leading to homesites in a timely manner.  In addressing the requirements of commonality, the court

6

held that the lower court had abused its discretion in refusing to certify a class action where each

claim was based on the same essential facts, suing for breaches of identical clauses in their purchase

agreements, where each owner sought enforcement of the contractual remedy. Id. at 398. The court

reasoned that:

> Here, appellants are suing to recover for breaches of identical clauses in their purchase
> agreements. Although other clauses in the contracts may not be common to all contracts and
> the reasons for GDC's delays in providing roads may vary, class certification is appropriate
> because each claim is based on the same essential facts and each complainant seeks
> enforcement of the contractual remedy.

Id. at 398. Here, likewise, Plaintiffs and Class Members claims are based on Defendants' violation

of Class Members' privacy rights, negligence in failing to protect Class Members' financial

information, and breach of implied contract. *See also* Paladino v. American Dental Plan, Inc., 697

So.2d 897, 899 (Fla. 1st DCA 1997) (holding that dentists who sued prepaid dental plan seeking to

recover back capitation satisfied the commonality requirement of class action rule, where every

participating dentist appeared to have the same capitation provision in their contract and each would

seek recovery under the provision based upon breach of contract).

Commonality also exists where a similar pattern and practice are at issue. *See Kornberg v.*

*Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. den.* 470 U.S. 1004 (1985)

(asserting that factual variations will not bar certification). "A court will normally find commonality

where a question of law refers to standardized conduct by defendants towards members of the

proposed class." *In re Amerifirst Litigation* at 428. *See also, Colonial Penn Insurance Company*

*v. Magnetic Imaging Systems I, Ltd.*, 694 So.2d 852, 854 (Fla. 3d DCA 1997) (noting that section

(a)(2) is satisfied when the plaintiffs present claims that arise out of the same course of conduct even

where there are differing factual contexts). Further, section (a)(2) is satisfied when the legal question

"linking [the] class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mtg, Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)).  As a result, commonality is "easily met in most cases." 1 Newberg § 3.10 at 3-50.

The central focus of this class action is Defendants' common conduct which has violated each class members' rights in similar fashion.  Complaint at ¶ 26.  The same facts that give rise to Plaintiffs' claims also give rise to the claims of Class Members whom, if they brought individual actions, would have to prove identical facts regarding Defendants' practice to answer identical legal questions.  Here the common legal and factual questions surround:

a.   whether class members' privacy rights were violated by the unlawful disclosure of class members' credit and debit card information without the consent of class members;

b.   whether class members sustained damages as a result of Defendants' violation of said privacy rights;

c.   whether Defendants owed a duty to class members to protect and safeguard class members' credit and debit card information;

d.   whether Defendants breached said duty by negligently maintaining and safeguarding class members' credit and debit card information;

e.   whether class members sustained damages as a result of Defendants' negligent maintenance of class members' credit and debit card information;

f.   whether Defendants breached its implied contract with class members;

g.   whether class members incurred damages as a result of said breach.

Complaint at ¶ 27.

8

In short, commonality is established because Plaintiffs seek for themselves and Class Members, as their claims involve common issues and offenses committed by Defendants though a common course of conduct.

### C.     Typicality

Typicality is satisfied when "the claim or defense of the representative party is typical of the claim or defense of each member of the class." Fla.R.Civ.P. 1.220(a)(3).  In other words, typicality means that there are "'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. Utilli Corp. United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).  Or, that the defendant class members all share the same or similar defenses. *In re Eagle Computer Securities Litigation*, 1986 WL 12574, 6 (N.D. Cal. 1986).

The purpose behind the requirement of typicality is merely to assure that the interests of the named plaintiffs are aligned with those of the plaintiff class. *Singer*, 185 F.R.D. at 689.  The test for typicality is not demanding and factual variations will not preclude class certification if plaintiffs' claims arise from the same event or course of conduct as the plaintiff class claims, and give rise to the same legal or remedial theory. *In re Contact Lens Litigation*, 170 F.R.D. at 532 (holding that the requirement of typicality was satisfied where the defendants' conspiracy to restrict the channels of distribution of contact lenses gave rise to the plaintiffs' and all class members' claims that they paid extremely uncompetitive prices for their lenses).  The burden is "fairly easily met so long as other plaintiff class members have claims similar to the named plaintiff." *Alpern*, 84 F.3d at 1540 (quoting *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

In reviewing a claim of typicality for a plaintiff class, "the focus is on defendant's behavior, not that of plaintiff, and on whether the plaintiff class can point to the same general overall course of conduct that gives rise to the claims of the other plaintiff class members, and her or his claims are based on the same legal theory." *Collins, et al. v. International Dairy Queen, Inc.*, 168 F.R.D. 668, 674 (M.D. Ga. 1996) (quoting *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 407 (D. N.J. 1990)). Therefore, "the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual [plaintiff] class members, or there is a disparity in the damages claimed by the representative parties and the other members of the [plaintiff] class." *Kornberg*, 741 F.2d at 1337 (holding that the requirement of typicality was satisfied even though the severity of the problems with the cruise ship's toilets varied from passenger to passenger). *See also, McFadden v. Stanley*, 687 So.2d 357, 359 (Fla. 4th DCA 1997) (certifying a Rule 1.220(b)(3) class of individuals who received food poisoning after eating at the defendant's restaurant, and finding that the issue of damages was typical, regardless of the extent that individual damages differed). *See also, Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (asserting that typicality is satisfied if the claims of the named plaintiff have the same essential characteristics as the class at large).

Here, the interests of named Plaintiffs are similar to and aligned with the interests of the members of the Class. As described above, *see* discussion *infra* Section V(B), the claims of Plaintiffs are typical of the claims of the other Class Members, and Plaintiffs have the same interests as other Class Members because Plaintiffs were victims of the unlawful conduct described above.

**D.     Adequacy**

Adequacy is satisfied if the named plaintiff or defendant "can fairly and adequately protect and represent the interests of each member of the class". Fla. R. Civ. P. 1.220(a)(4). The named

10

plaintiff must show that they have interests common, and not antagonistic, to those of the other plaintiff class members, and that the named plaintiff and his attorneys will properly prosecute the class action. *See Colonial Penn*, 694 So.2d at 854 (holding that the plaintiffs and class members had common interests and that the plaintiffs, along with their attorneys, would properly prosecute the class action); *Broin*, 641 So.2d at 893 (finding adequacy even though class members were spread throughout the country as well as other nations).

Rule 1.220 (a)(4) does not require "the named plaintiffs [to] demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988). Instead, the focus is on whether Plaintiffs' counsel possess the qualifications and experience to pursue the legal claims and exhibit the desire to prosecute vigorously a class action. *Id.* at 726-727.

Plaintiffs satisfy both prongs of the adequacy requirement. Plaintiffs' interests are not antagonistic to those of prospective Class Members. Plaintiffs, like all Class Members, were and are victims of the same illegal conduct (described above). As a result, all stand in the same shoes with the same incentive to establish Defendants' wrongful conduct. Proof of Plaintiffs' claims will establish the same issues of law and fact as the claims of the Class.

Secondly, Plaintiffs sought the representation of counsel who possess recognized and extensive experience in the prosecution and successful resolution of complex class action litigation, including privacy and negligence claims, within Florida and nationwide. Plaintiffs' counsel are vigorous advocates, have expertise in handling class action litigation including class action litigation involving privacy rights and interests of consumers, and are well qualified, experienced, and able to conduct this litigation. [*See* Yanchunis Aff. at ¶¶3-5 (attached as Exhibit 2)].

11

## VI.   THE CONDITIONS OF RULE 1.220(b)(1), (2) AND (b)(3) ARE SATISFIED

Plaintiffs seek certification of their claim on behalf of the Class alternatively under Rule 1.220(b)(1)(A), (b)(2), and/or (b)(3).   As discussed below, the requirements of Rules Rule 1.220(b)(1)(A), (b)(2), and (b)(3) are satisfied in this case.

### A.    The Requirements of 1.220(b)(1) Are Satisfied

1.220(b)(1)(A) provides that a class action is appropriate where the prosecution of separate claims or defenses by or against individual members of the class would create a risk of inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class. 1.220(b)(1)(A); *see generally,* *Janick v. Prudential Ins. Co. of America*, 305 Pa.Super. 120, 143-144, 451 A.2d 451, 462 - 463 (Pa. Super. 1982) (certifying a class under the Pennsylvania state equivalent of (b)(1)(A) in part because "[a]ll claims arise from interpretation of virtually identical contract language, so that even a small risk of inconsistent adjudications is unnecessary").   Thus, certification under either or both of the (b)(1) sub-sections is designed to protect the interests of the party opposing the class and to "obviate the actual or virtual dilemma" created by incompatible adjudications in that compliance with one judgment would violate the terms of another. *See* Fed.R.Civ.P. 23(b) advisory committee's note.[1]

In *Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558 (S.D. Fla. 1974) (certifying a (b)(1)(A) class of all cruise passengers who were negligently provided contaminated water), the court held that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would

---

[1]   Florida Rule 1.220(b)(1)(A) tracks identically the language of Federal Rule 23(b)(1)(A).

12

establish incompatible standards of conduct for the parties opposing the class. *Id.* at 561; *see also,*
*Ingles v. City of New York*, 2003 WL 402565, 7 (S.D. N.Y. 2003) (holding that certification was
proper under (b)(1)(A) and recognizing that "clearly all litigants as well as the courts benefit from
consistency in the adjudication of claims of individual class members").

Here, this case is appropriate for class certification under 1.220(b)(1)(A) because of the risk
inconsistent or varying declarations would establish incompatible standards of conduct for
Defendants. Additionally, as Plaintiffs and Class Members also seek injunctive and equitable relief,
class treatment of these claims would prevent the possibility of different courts establishing
inconsistent standards of conduct for the Defendant.

**B.    The Requirements of 1.220(b)(2) Are Satisfied**

The case at hand satisfies the requirements for certification of a Class for declaratory relief
pursuant to Rule 1.220(b)(2). Rule 1.220(b)(2) applies where "the party opposing the class has acted
or refused to act on grounds generally applicable to the class, thereby making appropriate final
injunctive or corresponding declaratory relief with respect to the class as a whole." *Amparo Campos,*
*et al. v. Immigration and Naturalization Service*, 188 F.R.D. 656, 661 (S.D. Fla. 1999).[2] "Generally
applicable" means that the party opposing the class has acted in a consistent manner towards

---

[2]   Monetary relief is also a proper form of damages under (b)(2) so long as the primary
relief is declaratory or injunctive. *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla.
1997). *See also, e.g., Bradford v. AGCO Corp.*, 187 F.R.D. 600, 605 (W.D. Mo. 1999) (refusing
to accept the argument that a request for monetary relief defeats the possibility of ever
maintaining an injunctive 23(b)(2) class action and holding "[s]uch a nonsensical reading of the
federal rules does not make good law and is flatly rejected by this Court"); *Groover v. Michelin*
*North America, Inc.*, 187 F.R.D. 662 (M.D. Ala. 1999) (certifying a 23(b)(2) class, holding that
the requested monetary relief was incidental to the requested injunctive relief because plaintiffs
were not seeking extra-contractual or punitive damages, but instead were seeking injunctive
relief ordering defendant to restore retirees to their full medical benefits).

members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D. Fla. 1997); Wright & Miller, *Federal Practice and Procedure*, § 1775 at 449.

As previously discussed, Defendants' conduct did not vary between and amongst class members, but was uniform as to members of the particular Class of individuals and as a result, Defendants' conduct is consistent toward, and generally applicable to Plaintiffs and Class Members. Therefore, the requirements for certification of a class under rule 1.220(b)(2) are satisfied.

**C.   The Requirements of 1.220(b)(3) Are Satisfied**

For certification of a plaintiff class under Rule 1.220(b)(3), Plaintiffs must show that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication.

**1.   Common Questions of Law or Fact Predominate**

Courts take a common sense approach to determining whether a class meets the predominance test of section (b)(3). *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). To determine whether common questions predominate, "courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 73 (E.D. N.Y. 2004) (predominance of common issues found where substantively similar policy provisions were at issue in plaintiffs' and the putative classes' breach of contract claim); *Janick v. Prudential Ins. Co. of America*, 451 A.2d 451, 461-62 (Pa. Super. Ct. 1982) (where common question of interpretation of contract provision was critical to the recovery sought predominance established); *Lebrilla v. Farmers Group, Inc.*, 16 Cal. Rptr.3d

14

25, 30-31 (Cal. App. 4 Dist. 2004); *Paladino v. American Dental Plan, Inc.*, 697 So.2d 897, 899 (Fla. 1st DCA 1997) (holding that dentists who sued prepaid dental plan seeking to recover back capitation satisfied predominance requirement of class action rule inasmuch as interpretation of contract's capitation provision predominated over other questions of law or fact affecting individual class members).

Section (b)(3) requires only that common questions of law or fact predominate, not that they be dispositive. *Jenkins*, 782 F.2d at 472. A claim will meet the predominance requirement when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis, since such proof obviates the need to re-examine each class member's individual position. *In re Potash Antitrust Litigation*, 159 F.R.D. 682, 693 (D.C. Minn. 1995); *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D.C. Minn. 1990).[3] Therefore, where "as in this case, 'all class members are united in their desire to establish broader coverage under their insurance policies (i.e. liability), individual issues are secondary and the claim should be certified." *In re IGI Securities Litigation*, 122 F.R.D. 451, 460 (D. N.J. 1988) (quoting *In re Data Access Systems Securities Litigation*, 103 F.R.D. at 142 (D. N.J. 1984)).

Here, Defendants' conduct did not vary between and amongst class members but was uniform as to members of the particular Class of individuals, and as a result, the common liability questions predominate over any individual issues regarding the amount of damages owed to individuals. *See Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 -74 (S.D. Fla. 1997) (holding that

---

[3]   *See also Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 252 (D. N.J. 1992) (asserting that predominance is satisfied where the defendant's challenged activity stems from a classwide course of conduct); *Zinberg,* 138 F.R.D. at 410 ("[w]here all class members are united in their desire to establish the defendants' complicity and liability, individual issues, if they exist, are secondary").

certification was proper under rule provision requiring predominant common questions and superiority of class action method for adjudication of controversy where plaintiffs, who were injured in accidents while occupying vehicles obtained from single lessor, filed class action against the automobile insurer asserting that automobile insurance policies provided medical payments, personal injury protection, and uninsured/underinsured motorist coverage for their injuries).

Further, "individualized determinations of damages do not defeat class certification." *CV Reit, Inc., et al. v. Levy, et al.*, 144 F.R.D. 690, 699 (S.D. Fla. 1992). The number of cases in which the damages incurred by each class member are identical is extremely small because "individual issues such as the actual extent of reliance or the amount of damages arise in most, if not all, class actions." *In re IGI Securities*, 122 F.R.D. at 460. As a result, satisfaction of the predominance requirement is not precluded merely by the existence of individual questions regarding issues such as damages. *In re Workers' Compensation*, 130 F.R.D. at 108. In *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259, 1273 (11th Cir. 2004), the Eleventh Circuit recognized that "individualized damages issues do[ ] not prevent a finding that the common issues in the case predominate; " [t]here are a number of management tools available to a [trial] court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class ." *See also*, *Broin*, 641 So.2d at 891 (stating that "[e]ntitlement to different amounts of damages is not fatal to a class action"; "[s]hould it become appropriate, the court may divide the class into subclasses to resolve these issues").

16

At bottom, "[a]ll class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D. N.J. 1999). There are no issues presented in this case on which Plaintiff and Class Members are in conflict. Here, Defendant has consistently breached its contracts with Plaintiff and Class Members. Thus, proof of Plaintiffs' claims will establish the same issues of law and fact as the claims of the Class as a whole on liability and a proper damages determination may be accomplished by several alternative means.

In sum, because of the common question regarding Defendants' culpability, the gains to be had from collective proof on these issues will far outweigh any manageability problems related to the potential need for individual proof of damages. *See Broin*, 641 So.2d at 891 (concluding that entitlement to different amounts of damages is not fatal to a class action and that subclasses may be used to resolve such issues).

### 2.    A Class Action Is Superior To Other Available Methods Of Adjudication

There are four elements to consider in determining whether the superiority requirement of 1.220(b)(3) is satisfied: the interests of members of the class in individually controlling the prosecution of separate actions; the extent and nature of any litigation growing out of the same controversy and involving the same parties; the desirability of concentrating the litigation in one forum; and the manageability of a class action. *See* Fla. R. Civ. P. 1.220(b)(3)(A)-(D); *Garner*, 184 F.R.D. at 603 (holding that superiority requirement was satisfied where the products at issue in the case were low cost items and the possible recovery for each individual plaintiff would be dwarfed by individual litigation costs). *See also, In re Contact Lens Litigation*, 170 F.R.D. at 533 (concluding that a class action was the superior method of litigation because the large number of

small or medium-sized claims against the defendants would make individual litigation economically infeasible).

A class action is particularly appropriate when redress for the individual claims is disproportionately expensive. *In re Amerifirst Litigation*, 139 F.R.D. at 435. The Supreme Court has acknowledged the need for aggregate representation through certification if such claims are to be addressed:

> the aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Here, given the relative small size of the claims involved, aggregation of the claims may provide the only practical way in which Plaintiff and Class members are provided their day in court to address the allegations against Defendant.

This action will cause an orderly and expeditious administration of the Class claims, economies of time, effort and expense will be fostered and uniformity of decisions will be insured. Other available means of adjudicating the claims of Plaintiffs and Class Members – such as thousands of individual actions brought separately and pursued independently in courts across the state – are impracticable and inefficient. Without a class action, Class Members will continue to suffer and Defendants' unlawful conduct with regard to Defendants' violation of Plaintiffs' privacy rights, Defendants' negligence and failure to protect customers' financial information, and Defendants' breach of implied contract.

In the present case, no putative class member has indicated an interest in individually controlling the litigation. The costs and expenses of such individual actions are prohibitive when weighed against the potential individual recoveries. The relative resources available to litigate an individual action against a profitable company such as Defendants are grossly disparate. As a result, certification of aggregate litigation in one forum is extremely desirable in this case.

Consistent with the requirements of Rule 1.220(b)(3), the certification of this litigation as a plaintiff class action against the named defendant is not only superior to other available methods for the fair and efficient litigation of the controversy, but appears to be the sole method for fairly and efficiently litigating the claims of Plaintiffs and Class Members. In short, there is no doubt that the prosecution of this suit as a class action will achieve judicial economy, deter inconsistent results, and provide a means of redress to individuals who otherwise have no realistic shot at having their day in court.

## VII. ALTERNATIVELY, PLAINTIFFS SHOULD BE PERMITTED REASONABLE DISCOVERY TO ASCERTAIN ADDITIONAL FACTS TO SUPPORT THE APPROPRIATENESS OF CLASS CERTIFICATION OF THIS ACTION

Notably, Defendants have not yet filed any response to the Complaint, nor have the parties engaged in the disclosure of any information as required under Florida discovery rules, including the identification of witnesses, or production of any documents. Furthermore, Plaintiffs have not yet deposed any employees and/or agents of Defendants. Consequently, Plaintiff have not had the opportunity to discover any information or facts further substantiating Defendants' unlawful conduct. Without the benefit of any reasonable discovery, existence of additional facts supporting class certification of this action cannot be ascertained. Therefore, if this Court is inclined to deny

Plaintiffs' Motion for Class Certification, Plaintiffs respectfully request that such denial be without prejudice to allow the parties to participate in necessary reasonable discovery.

## VIII.   CONCLUSION

The purpose of class actions is to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion..." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).   In establishing their claims, Plaintiffs will advance the claims of other similarly situated individuals against the Defendants.   Thus, the claims contained in the complaint can be resolved efficiently and effectively through certification of the above described 1.220(b)(1), (b)(2), and/or (b)(3) Plaintiffs' Class, and because all the prerequisites to certification under Rule 1.220 are met, Plaintiffs' Motion for Class Certification should be granted.

Respectfully submitted,

John A. Yanchunis
FBN: 324681
James, Hoyer, Newcomer & Smiljanich, P.A.
4830 W. Kennedy Blvd., Ste. 550
Tampa, FL 33609
(813) 286-4100
(813) 286-4174 (facsimile)

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by hand delivery to: Peter Zinober, Esquire, 625 East Twiggs Street, Suite 100, Tampa, Florida 33602; and by Federal Express to: Clifford H. Ruprecht, Esquire, One Monumental Square, 7th Floor, Portland, Maine 04101, this 4th day of April, 2008:

John A. Yanchunis

IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

MICHAEL WILLIAM BOLAND and
JANET L. BOLAND, on behalf of
Themselves and all others similarly
situated,

                Plaintiffs,

vs.

DELHAIZE AMERICA INC., a North Carolina
corporation;
HANNAFORD BROS. CO.,
a Maine corporation;
KASH 'N' KARRY FOOD STORES, INC.,
d/b/a SWEETBAY SUPERMARKET and
SWEETBAY LIQUORS, a Delaware
corporation,

                Defendants.

CASE NO.:   08-06475

DIVISION:   C

APR  4 2008

_ndc_

_____/

## AFFIDAVIT OF JOHN YANCHUNIS OF PLAINTIFF'S MOTION
## FOR CERTIFICATION OF CLASS

**STATE OF FLORIDA**

**COUNTY OF HILLSBOROUGH**

    BEFORE ME, the undersigned authority, personally appeared John A. Yanchunis, who

after being duly sworn, deposes and says:

    1.    The purpose of this affidavit is to provide support for the component of adequacy

           of counsel under rule 1.22(a) of the Florida Rules of Civic Procedure.

    2.    I am an attorney duly admitted to practice law in the states of Florida and Texas.  I

am a shareholder of the law firm James, Hoyer, Newcomer & Smiljanich, P.A. (hereinafter

"James Hoyer").  A copy of my resume and the resume of my law firm, including the

professional staff employed by the law firm, is attached as Exhibit "A" to this affidavit.

3.     I am Counsel for Plaintiffs and the Class in this case.  I submit this affidavit in support of Plaintiff's motion for certification of class.  The facts herein stated are true of my own personal knowledge and if called to testify to such facts, I could and would do so competently.

4.     As supported by the attached resumes, members of my law firm and I are experienced, qualified attorneys who have prior experience litigating in this Court complex civil litigation matters including national consumer class action cases, complex civil litigated mattes as well as general civil litigated matters in this Court.  Moreover, before the commencement of this case, I have appointed and served as lead class counsel in class litigation in which classes have been certified nationally and statewide and which were resolved on terms favorable to the class.

5.     The focus of our law firm is class action litigation and false claims act cases.  The firm was founded by Bill James, the former State Attorney for the Thirteenth Judicial Circuit, and two of his chief assistants, Chris Hoyer and Judy Hoyer.  Before being elected to the position of State Attorney, Mr. James and Chris Hoyer and Judy Hoyer were career federal prosecutors.  With this foundation, these individuals organized the firm of James Hoyer similar to a prosecutor's office.  The firm has always employed as investigators a significant number of former FBI agents and other individuals with substantial experience in law enforcement and investigation. These same resources are utilized today by the firm.  As set forth in the firm's resume, three of our full-time investigators are retried from the FBI, another is a certified forensic fraud examiner who formerly worked for the Florida Attorney General's office where he was assigned to the Economic Crimes Unit, and another investigator is a retired detective with the Economic Crimes Unit of the Hillsborough County Sheriff's Office.

6.      For more than ten years I have focused my practice on class action litigation.  In addition to the successful prosecution of state and nationwide class litigation where I have served as lead counsel, I have also served as class counsel in a nationwide class involving privacy issues, In re: Doubleclick, Inc., Privacy Litigation, Master File No.: 00-CIV-0641 (NRB), (S.D. NY)., May 23, 2002, which was settled in 2002.  I have also served in as co-lead counsel in other class actions involving privacy issues, including possibly the largest class action ever settled involving more than 200 million people, Fresco v. Automotive Directions, Inc., Case No.: 03-61063-CIV, Martinez/Simonton (S.D. Fla).  The fairness hearing to consider the settlement was held on October 23, 2007, and the Court's consideration of the motion for final approval is pending.

7.      In addition, I have served as lead counsel in the following class actions involving privacy issues which were certified and settled:

a.      Rios v. Direct Mail Express, Inc., Case No.: 05-61689-CIV-Brown (S.D. Fla), (Final Judgment entered on September 26, 2007);

b.      Pino v. Warranty Acceptance Corporation, Case No.: 05-61576-CIV-Jordan-Klein (S.D. Fla), (Final Judgment entered on August 20, 2007);

c.      Kehoe v. Fidelity Federal Bank and Trust, Case No.: 03-80593 (S.D. Fla), (Final Judgment entered on December 13, 2006); and

d.      Davis v. Bank of America, Case No.: 05-80806 (S.D. Fla), (Final Judgment entered on July 24, 2006).

8.      The interests of the class representative are not now nor have they ever been antagonistic to the class, and the class representative has always placed the interests on the class before its own interests.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct. Executed this _4th_ day of April, 2008 at Tampa, Florida.

_____
JOHN A. YANCHUNIS

Sworn to and subscribed to me this _4th_ day of April, 2008.  Personally known to me.

_____
NOTARY PUBLIC, State of Florida

**Dobrila Stephens**
Commission # DD313977
Expires May 5, 2008
Bonded Troy Fain - Insurance, Inc.  800-385-7019

## JOHN A. YANCHUNIS

Born Columbus, Ohio.  Admitted to bar, 1980, Texas; 1981, Florida, U.S. District Court, Southern District of Texas, Northern District of Texas, , Middle District of Florida, Southern District of Florida, Eastern District of Wisconsin, U.S. Court of Appeals, Fifth, Seventh, Ninth and Eleventh Circuits, and the U.S. Supreme Court.

## EDUCATION

University of Florida, B.A., 1976.  Major in political science.  Member, Florida Blue Key, Omicron Delta Kappa, Sigma Alpha Epsilon.

South Texas College of Law - J.D., magna cum laude, 1980.  Member, Order of the Lytae,  Associate Editor-in-Chief and Technical Editor of the South Texas Law Journal, Phi Alpha Delta.

## EMPLOYMENT

James, Hoyer, Newcomer & Smiljanich                    Shareholder, 2000 to present
    (Practice Areas:  Consumer and Insurance Law, Class Actions)

James, Hoyer, Newcomer, Forizs &                            Shareholder, 12/97 to 12/99
    Smiljanich, P.A.

Blasingame, Forizs & Smiljanich, P.A.                       Shareholder, 8/90 to 12/97

Greene & Mastry, P.A.                                              Shareholder, 1985 to 1990

Greene, Mann, Rowe, Stanton, Mastry & Burton, P.A.      Associate, 1982 to 1985

Honorable Carl O. Bue, Jr., United                             Law Clerk, 1980 to 1982
    States District Judge, Southern District
    of Texas

## PROFESSIONAL ACTIVITIES

The Florida Board of Bar Examiners                          Member, 1997 to 2002
                           Presently an Emeritus Member
    Subcommittees

    Committee on Character and Fitness                   Chair, 2000 to 2003
                                       Member, 1998 to 2000

    Committee on Petitions                                     Chair, 1999 to 2000
                                       Member, 1998 to 1999

| | |
|---|---|
| Committee on Budget | Member, 1999 to 2003 |
| Committee on Questions | Member, 1998 to 2003 |
| Committee on Abstracts of Practice | Chair, 2000 to 2003<br>Member, 1999 to 2003 |
| Examination Grading | 7/00 |

## FLORIDA BAR ACTIVITIES

| | |
|---|---|
| The Florida Bar Foundation | Board of Directors, 2003 to 2006<br>Fellow |
| Special Commission on<br>Multi-Jurisdictional Practice | Chairman, 2001 to 2005 |
| Special Committee on the Enhancement<br>of the Practice of Law | Member, 1997 to 1998 |
| Board of Governors of The Florida Bar | Member (Representative from the<br>Sixth Judicial Circuit), 1999 to 2003 |

    SubCommittees

| | |
|---|---|
| Budget Committee | Member, 2000 to 2003 |
| Multi-Disciplinary Practice Committee | Member, 1999 to 2002 |
| Board Review Committee on<br>Professional Ethics | Member, 1999 to 2002 |
| 6th Circuit Pro Bono Committee | Chair, 1999 to 2000 |
| Ethics Committee | Member, 1997 to 1999 |
| Standing Committee on Simplified Forms | Vice Chairperson, 1998 to 1999<br>Member, 1996 - 1998 |
| Task Force on the Unlicensed Practice<br>of Law | Member, 1996 |
| Standing Committee on the Unlicensed<br>Practice of Law | Chairperson, 1995 to 1997<br>Vice Chairperson, 1994 to 1995<br>Member, 1990 to 1994 |

| | |
|---|---|
| Standing Committee on Professionalism | Member, 1991 to 1993 |
| Continuing Legal Education Committee | Member, 1991 to 1992 |
| Public Relations Committee | Member, 1989 to 1990 |
| Board of Governors of Young Lawyers Division of the Florida Bar, Sixth Circuit Representative | Member, 1988 to 1992 |

Unlicensed Practice of Law Committees:

| | |
|---|---|
| 6A Circuit Committee | Chairperson, 1986 to 1995<br>Member, 1985 |
| 6B Circuit Committee | Chairperson, 1995 |

I have had the privilege of representing The Florida Bar in a number of aspects, including as special counsel in the prosecution of individuals for The Unauthorized Practice of Law and as follow up in direct criminal contempt proceedings. I have argued before the Florida Supreme Court on behalf of The Florida Bar on a number of occasions – most recently on February 8, 2005, when I argued in support of amendments to the Bar's rules to address issues relating to the practice of law in our state by lawyers admitted in other states. These cases are as follows:

*In re Amendments to the Rules Regulating the Florida Bar and The Florida Rules of Judicial Administration*, 907 So.2d 1138, 30 Fla. L. Weekly S351 (Fla., May 12, 2005)(NO. SC04-135)

*Florida Bar re Revisions to Simplified Forms, Pursuant to Rule 10-2.1(a) of the Rules Regulating The Florida Bar*, 774 So.2d 611, 25 Fla. L. Weekly S570 (Fla., Jul 13, 2000)(NO. SC92023)

*The Florida Bar v. Eubanks*, 752 So.2d 540, 24 Fla. L. Weekly S304 (Fla., Jun 24, 1999)(NO. 91,084)

*The Florida Bar re Advisory Opinion on Nonlawyer Representation in Securities Arbitration*, 696 So.2d 1178, 22 Fla. L. Weekly S388 (Fla., Jul 03, 1997)(NO. 89,140)

*The Florida Bar re Advisory Opinion Activities of Community Ass'n Managers*, 681 So.2d 1119, 21 Fla. L. Weekly S328 (Fla., Jul 18, 1996)(NO. 86,929)

*The Florida Bar re Amendments to Rules Regulating the Florida Bar* (Proceedings Before a Referee), 685 So.2d 1203, 21 Fla. L. Weekly S291 (Fla., Jun 27, 1996)(NO. 87,132)

*The Florida Bar v. Schramek*, 670 So.2d 59, 21 Fla. L. Weekly S51 (Fla., Feb 01, 1996)(NO. 83,873)

*The Florida Bar v. Schramek*, 616 So.2d 979, 18 Fla. L. Weekly S243 (Fla., Apr 15, 1993)(NO. 77,871)

## VOLUNTARY BAR ASSOCIATIONS

| | |
|---|---|
| St. Petersburg Bar Association<br>    Executive Committee | Member, 1996 to 2005<br>1996 to 1998 and 2003 to 2005 |
| St. Petersburg Law Library Board of Trustees | Member, 1997 to 1998 |
| Federal Bar Association | Member since 1981 |
| Sixth Circuit Committee on Professionalism | Current Member |

"AV" Rated by Martindale Hubbell

## COMMUNITY ACTIVITIES

| | |
|---|---|
| Elder Law Advisory Board, College of Law and the Center for Excellence in Elder Law - Stetson University College of Law | Member, 2003 to present |
| Community Law Program | Member |
| St. Vincent de Paul Society,<br>St. Petersburg Downtown Conference | Vice President, 2001 |

<u>Boy Scouts of America</u>

| | |
|---|---|
|     Boy Scouts of America | National Council Member, Council Representative, 2005 to present |
|     West Central Family Council<br>    of The Boy Scouts of America | Council President, 2005 to 2007<br>Member of Executive Committee,<br>2003 to present<br>Skyway District Chairman, 2003 to 2004 |
|     Cub Scouts<br>    Pack 219 | Cub Master<br>Assistant Cub Master<br>Webelos Den Leader |
|     Boy Scout<br>    Troop 219 | Committee Chairperson<br> 2001 to 2004<br>Assistant Scout Master<br>1997 to 2001 |

Received the Silver Beaver, 2006; District Award of Merit - Skyway District, 2005

# JAMES, HOYER, NEWCOMER & SMILJANICH, P.A.
## ATTORNEYS AT LAW

Jill H. Bowman
Christopher C. Casper
Jonathan B. Cohen
Christa L. Collins
David T. Henniger (of counsel)
Judy S. Hoyer
W. Christian Hoyer
Bill James (Ret.)
Nicole C. Mayer
J. Andrew Meyer
John R. Newcomer, Jr.

ONE URBAN CENTRE, SUITE 550
4830 WEST KENNEDY BOULEVARD
TAMPA, FLORIDA 33609
(813) 286-4100  FAX (813) 286-4174

P.O. BOX 1259
ST. PETERSBURG, FL 33731
(727) 823-3837 FAX (727) 822-2969

www.jameshoyer.com

Elaine Scudieri Stromgren
Terry A. Smiljanich
John A. Yanchunis

Investigators:
Frank Martelli
Allen H. McCreight
Michael D. Mihok
Robert North
Jim Ross
Alfred W. Scudieri
Robert D. Ulmer

## FIRM BIOGRAPHY

James, Hoyer, Newcomer, & Smiljanich P.A., was formed in January 1993.  Since its inception the firm has been actively engaged in complex, consumer-related litigation on behalf of defrauded consumers.  Notably, beginning in 1993, the firm successfully litigated the class action suit of *Horton et al. v. Metropolitan Life Insurance Company*, Case No. 93-1849-CIV-T-23A, in the United States District Court for the Middle District of Florida. This was the first class action lawsuit brought against a life insurance company for deceptive market conduct in the sale of life insurance.  Since then, the firm has been involved in more than forty additional class action lawsuits involving similar conduct.

The firm has been involved as lead or co-counsel in more than eighty class action law suits on a nationwide basis.  In each of these suits, the firm has represented a class of plaintiffs who alleged a fraudulent scheme conducted against consumers. This has included deceptive sales practices, discriminatory pricing, product liability, and deceptive banking and credit card practices. The firm has represented many relators in *qui tam* actions for frauds against the government.  In addition, the firm has represented many individuals who have been victimized by fraudulent conduct of corporations.

Our lawyers and staff are experienced in complex litigation involving insurance coverage, class actions, mass torts, civil rights and products liability. Many of our lawyers began their careers as prosecutors, law enforcement officers or FBI agents. Our firm employs veterans of the civil and criminal divisions of the United States Department of Justice as well as a former Assistant Director of the FBI. We are also supported by a staff of eight investigators. Our investigators have decades of experience involving complex cases and have investigated matters  throughout the world.

Our firm has been involved in the settlement of cases with a combined value of more than $2 billion. This unique range of expertise has resulted in a nationwide practice.  Biographies of the firm's attorneys and investigators are set out below.

## PARTNERS

**BILL JAMES (Retired)**, born St. Louis, Missouri, October 16, 1932; admitted to bar, 1957, Missouri; 1958, U.S. District Court, Eastern District of Missouri; 1966, Florida; 1969, U.S. District Court, Middle District of Florida; 1970, U.S. Court of Appeals, Fifth Circuit. *Education*: Amherst College; Kansas State College; Washington University (A.B., 1955; J.D., 1957). Commissioner, Justice Administrative Commission, 1985-1992. Secretary, Treasurer, Florida Prosecuting Attorneys Association, 1988. Committee Member, Florida Standard Jury Instructions in Criminal Cases, 1985-1993. Assistant U.S. Attorney, Eastern District of Missouri, 1960-1961. Chief Assistant U.S. Attorney, Tampa Division, Middle District of Florida, 1970-1978. Trial Attorney, Organized Crime Section, U.S. Department of Justice, 1978-1984. State Attorney, 13th Judicial Circuit, Tampa, Florida, 1985-1993. *Member:* Hillsborough County Bar Association; The Florida Bar; The Missouri Bar; Ferguson-White Inn of Court.

**W. CHRISTIAN HOYER**, born Metuchen, New Jersey, April 4, 1945; admitted to bar, 1973, Florida and U.S. District Court, Middle District of Florida; 1975, U.S. Supreme Court. *Education*: Rider College (B.S. Economics, 1970); University of Florida (J.D., with honors, 1973). Trustee Scholar, Rider College. Recipient Milam Case Comment Award, University of Florida. Executive Editor, University of Florida Law Review, 1972-1973. Law Clerk, U.S. District Judge Ben Krentzman, 1973-1975. Author, "Corps of Engineers Dredge and Fill Jurisdiction Under Siege," 26 U. Fla. L. Rev. 19 (1973). Assistant U.S. Attorney, Tampa, Florida 1975-1980. Trial Attorney, U.S. Justice Department Strike Force on Organized Crime, 1980-1984. Chief Assistant State Attorney, Tampa, 1985-1992. Chairman, Hillsborough County Justice Committee, 1988-1992. Chairman, Hillsborough County Justice Information Steering Committee, 1987-1992. Member, Judicial Nominating Commission, 13th Judicial Circuit, 1986-1990*Member*: Hillsborough County Bar Association (Vice Chairman, Trial Lawyers Section, 1990-1991); The Florida Bar (Member, Grievance Committee, 1985-1990).

**JUDY SCHROPP HOYER**, born Havre de Grace, Maryland, November 6, 1949; admitted to bar, 1976, Florida; 1977, U.S. District Court, Middle District of Florida; 1980 U.S. Supreme Court. *Education*: Mary Washington College; George Mason University (B.A., cum laude, 1973); Stetson University (J.D., 1976). Executive Editor, Law Review, 1975-1976. Who's Who. Recipient, Florida Bar Achievement Award. Governor, Fifth Circuit, American Bar Association Law Student Division. Author, "Cross Examination & Impeachment," Criminal Trial Practice in Florida, The Florida Bar C.L.E. (2nd Ed. 1991); Labor Law Review Note, The Florida Bar Journal, 1975. Assistant State Attorney, 1976-1977 and 1985-1993. Assistant U.S. Attorney, 1977-1985. Special Counsel to the Florida Legislature on Sexual Harassment Hearings, 1991. *Member:* Hillsborough County Bar Association, Trial Lawyers Section, 1991 to present, Chairman, 1997-1998; Trial By Jury (Chairman, 1991-1995); Hillsborough Association for Women Lawyers; Ferguson-White American Inns of Court (Master, 1987 to present; Counsel to the Inn 1991-1998; President-Elect 1998-1999; President 1999-2000; Master Emeritus 2001).

**JOHN R. NEWCOMER, JR.,** born Clearwater, Florida, June 24, 1947; admitted to bar, 1972, Florida; 1973, U.S. District Court, Middle District of Florida; 1981, U.S. Court of Appeals, Eleventh Circuit; and 1977, U.S. Court of Appeals, Fifth Circuit. *Education*: University of Florida (B.S.B.A., 1969); Florida State University (J.D., with honors, 1972); Legal Advocacy Program, University of South Florida (1974-1976); Florida Academy of Trial Lawyers 1979-1992 (Presidents Club 1992); American Arbitration Association, Panel of Uninsured Motorist Claims (1986-1992); Associate-Yado, Keel & Nelson, P.A. (1972-1978); Partner-Yado, Keel, Nelson, Casper, Bergmann & Newcomer, P.A. (1978-1993); Partner-James, Hoyer & Newcomer, P.A. (1993 to present); *Member*: Hillsborough County Bar Association (Member, Elder Law Section, 1992-1993); The Florida Bar (Member, Grievance Committee, 1997); Arbitration Panel, U.S. District Court, Middle District of Florida (1985 to present); National Academy of Elder Law Lawyers.

**TERRY A. SMILJANICH,** born Tampa, Florida, March 1, 1947; admitted to bar, 1972, Florida and U.S. District Court, Middle District of Florida; 1981, U.S. District Court, Southern District of Florida and U.S. Court of Appeals, 11th Circuit. *Education*: University of Florida (B.A., 1969; J.D., 1972). Phi Beta Kappa; Phi Kappa Phi; Phi Alpha Delta. Executive Editor, University of Florida Law Review, 1971-1972. Law Clerk, Hon. Ben Krentzman, U.S. District Court, Middle District of Florida. 1972-1974. Assistant United States Attorney, 1974-1977. Associate Senate Counsel, Select Committee on Secret Military Assistance to Iran and the Nicaraguan Opposition (Iran/Contra), United States Senate, 1987. *Member*: The Florida Bar. [Capt. U.S. Army Reserve, 1972-1981]. (Board Certified Civil Trial Lawyer, Florida Bar Board of Legal Specialization and Education).

**JOHN A. YANCHUNIS,** born Columbus, Ohio, 1955; admitted to bar, 1980, Texas; 1981, Florida; U.S. District Court, Southern District of Texas; U.S. District Court, Middle District of Florida; U.S. District Court, Northern District of Illinois, U.S. Court of Appeals, Fifth, Sixth, Seventh, Ninth and Eleventh Circuits; and United States Supreme Court, 2000.          *Education:* University of Florida (B.A., 1976); South Texas College of Law (J.D., magna cum laude, 1980). Florida Blue Key, Omicron Delta Kappa, Phi Alpha Delta. Member, Order of the Lytae. Technical Editor and Associate Editor-in-Chief, South Texas Law Journal. Law Clerk to Judge Carl O. Bue, Jr., U.S. District Court, Southern District of Texas, 1980-1982. *Member*: St. Petersburg (Member, Executive Committee, 1996 to 1998; 2003 to 2005) and Federal Bar Associations; The Florida Bar (Member: Board of Governors of The Florida Bar, 1999 to 2003; member of the Board of Governors of Young Lawyers Division of The Florida Bar, 1988-1992; Public Relations Committee, 1989-1990; Continuing Legal Education Committee, 1991-1992; Standing Committee on Unlicenced Practice of Law, Member, 1990, Vice Chairperson, 1994-1995, Chairperson, 1995-1997, Unlicenced Practice of Law Committee, 6A Circuit, Member, 1985, Chairperson, 1986-1995; Unlicenced Practice of Law Committee, 6B Circuit, Chairperson, 1995; Chairperson, 1995; Professionalism Committee, 1991-1993; Simplified Forms, 1997 to-1998, Vice Chairperson 1998-1999; Ethics Committee, 1997-1999; The Florida Bar Foundation Committee (Member of the Board of Directors, 2003 to 2006); The Florida Board of Bar Examiners Member, 1997 to 2002); The Florida Bar's Multijurisdictional Practice of Law Commission, Chair 2002 to 2005; State Bar of Texas, Pro Bono College, 2005.

**CHRISTA L. COLLINS**, born Mt. Gilead, Ohio, November 6, 1958; admitted to bar, 1983, Florida; 1984 U.S. District Court, Middle District of Florida; 1985, U.S. Court of Appeals, and Eleventh Circuit. *Education*: Malone College (B.A., magna cum laude, 1979); Stetson University (J.D. cum laude, 1983). Phi Alpha Delta. Member, 1981-1982 and Associate Editor, 1982-1983, Stetson Law Review. Co-Author: "The Impact of Attorneys Attitudes Toward Pro Bono Public Efforts on Behalf of the Mentally Disabled," 12 Stetson Law Review 395, 1983. Teaching Assistant, Legal Research and Writing, Stetson University College of Law, 1982-1983.   *Member*: St. Petersburg Bar Association; The Florida Bar; Pinellas County Trial Lawyers Association.

**CHRISTOPHER C. CASPER**, born Tampa, Florida, August 27, 1968. *Education:* Awarded Bachelor of Arts degree in English from Georgetown University, 1990. Juris Doctor degree with honors, University of Florida College of Law, December 1994. Interned for Rosemary Barkett, Chief Justice of the Florida Supreme Court, summer 1993. Admitted to the Florida Bar, United States District Court for the Middle District of Florida, and United States Court of Appeals for the Eleventh Circuit, 1995. *Member:* Hillsborough County Bar Association, Trial Lawyers Section Board of Directors 1996-2004, Chairman 2004-2005. Federal Bar Association, Tampa Bay Chapter, Board 1999-2004, Membership Chair 1999-2000, Civil Co-Chair 2000-2004. Association of Trial Lawyers of America 2002-2004. Federalist Society 1998-2004.

**JILL H. BOWMAN**, born St. Petersburg, Florida, January 18, 1970; admitted to Bar 1995, Florida; U.S. District Court, Middle District of Florida, 1996; U.S. District Court, Northern District of Florida, 2001; U.S. District Court, Southern District of Florida, 2001; Federal Circuit Court of Appeals, 1997; Eleventh Circuit Court of Appeals, 1997. *Education*: University of Central Florida (B.A., summa cum laude, 1992); Stetson University College of Law (J.D., magna cum laude, 1995); *Member*: St. Petersburg Bar Association, 1996; appointed by the Florida Supreme Court to serve as a Member of the Florida Bar UPL Committee for the Sixth Judicial Circuit, 1999; appointed as a Member of the Florida Bar Ethics Committee, 2003.

**J. ANDREW MEYER**, born Deland, Florida, January 6, 1970; admitted to bar, 1995, Florida and U.S. District Court for the Middle District of Florida; 1996, New Jersey; 2000, U.S. District Courts for the Northern and Southern District of Florida; 2001, U.S. Court of Appeals, 11th Circuit. *Education:* University of Florida (B.A., *high honors*, 1991; J.D., 1995). Phi Beta Kappa. *Experience:* Associate, Law firm of Earle and Earle. 1995-1998. Office of the Attorney General, State of Florida, Criminal Appeals Bureau. 1998. Second District Court of Appeal, Senior Staff Attorney. 1998. Law Clerk, Hon. Chris W. Altenbernd, Second District Court of Appeal. 1998-2000. Associate and Partner, Carlton Fields, P.A. 2000-2004*Member:* American Bar Association, The Florida Bar (Chair, UPL Committee for the Sixth Judicial Circuit). *Awards:* Community Law Program's Newcomer Award, 1998; Carlton Fields' William Reece Smith, Jr. Pro Bono Award, 2001.

## ASSOCIATES

**JONATHAN B. COHEN**, born Albany, New York, October 9, 1973; admitted to bar, 2006, Florida. *Education:* Indiana University at Bloomington (B.A. in Journalism with concentration in Fine Arts, 1996); Stetson University College of Law (J.D., 2005); Received highest grade in Consumer Protection (2004); Intern for State Attorney's Office (Economic Crimes Unit), Thirteenth Judicial Circuit, Hillsborough County (2004); Intern for Hon. David A. Demers, Sixth Judicial Circuit Court of Florida (2004); Research Assistant for Professor Mark D. Bauer (2004-2005). *Member:* The Florida Bar.

**NICOLE C. MAYER**, born South Weymouth, Massachusetts, February 26, 1979; admitted to bar, 2005, Florida. *Education:* University of Florida (B.S., Advertising, with honors, 2002); Stetson University College of Law (J.D., 2004); Marketing Editor, *Stetson Law Review;* Member of Phi Delta Phi, Phi Theta Kappa, and Golden Key National Honor Societies; Intern for Hon. Elizabeth A. Kovachevich, United States District Court for the Middle District of Florida, Tampa Division (2004); Associate, Sponsler, Bennett, Jacobs & Cristal, P.A. (2005-2006).

**ELAINE SCUDIERI STROMGREN** , born San Juan, Puerto Rico, April 29, 1974; admitted to bar, 2000, Florida. *Education:* University of Florida (B.S., Zoology, with high honors, 1996; J.D., with high honors, 2000).  Phi Beta Kappa; Phi Alpha Delta.  Recipient Book Award, Criminal Law. *Member:* Prosecution Clinic, Eighth Judicial Circuit, Florida, 2000. Law Clerk, Hon. Maurice V. Guinta, Eighth Judicial Circuit Judge, 1999.

## OF COUNSEL

**DAVID T. HENNIGER**, born Cuyahoga Falls, Ohio, December 12, 1936; admitted to the Florida Bar, 1965; U.S. Supreme Court, 1971; Court of Appeals, Eleventh Circuit, 1981. *Education:* St. Petersburg Junior College (A.A. 1957); Florida Southern College, Salutatorian (B.S. summa cum laude, 1959); Stetson University College of Law, Valedictorian (J.D., cum laude, 1965).  Selected to Who's Who in American Law in 1989, Who's Who in the Southeast, 1990 and Who's Who in America, 46th Edition.  Biography, Men of Achievement, International Biographical, Cambridge, England, Fifteenth Edition.  International Man of the Year 1992/1993, International Biographical Center, Cambridge, England.  Authored "When Does The Statute of Limitations Run," Florida Bar Journal, December 1972; Chapter 13, "Best Evidence Rules, Evidence in Florida," Florida Bar Continuing Legal Education, 1971; Chapter 8, "Best Evidence Rule, Evidence in Florida, 2[nd] Edition," Florida Bar Continuing Legal Education, 3rd Edition, Evidence in Florida, Chapter Author: "Selected Commercial Torts," Basic Commercial Litigation, 1989, Florida Bar Continuing Legal Education.  Board Certified Trial Lawyer, certified by The Florida Bar Board of Certification (1983-1993) and the National Board of Trial Advocacy (Emeritus 1993). *Member:* The Florida Bar, St. Petersburg and American Bar Associations.

5

## INVESTIGATORS

**FRANK C. MARTELLI**, born Philadelphia, Pennsylvania, August 19, 1949. *Education:* Police Academy, St. Leo College, 1973; 25 years in Law Enforcement including Hillsborough County Sheriff's Office, Tampa, Florida; Detective for 16 years, specializing in White Collar and Computer Crime investigations.

**ALLEN H. McCREIGHT,** born Meridian, Mississippi, November 8, 1939; admitted to bar, 1964, Mississippi; 1964, U.S. District Court, Northern District of Mississippi; 1972 U.S. Supreme Court; member Mississippi State Bar (inactive) and American Bar Association since 1964. *Education:* University of Mississippi (B.B.A., 1961; LLB 1964). Previous employment: Federal Bureau of Investigation, May 1964 to February 1995. Began career as Special Agent and advanced through various supervisory and executive management positions, including Assistant Director, which is one of top 18 executive positions in the FBI. Retired in 1995 after serving six years as Special Agent in Charge of FBI Tampa, which covers all of Central Florida. Attended Federal Executive Institute, Charlottesville, VA; graduate of FBI Senior Executive Program and National Executive Institute (involves select FBI executives and top executives from law enforcement agencies throughout the nation and internationally).

**MICHAEL D. MIHOK**, born Dennison, Ohio, December 5, 1944. U.S. Air Force, 1962-1966. *Education:* Old Dominion University, Norfolk, Virginia (B.A. 1971). Former Special Agent of the Federal Bureau of Investigation (1971-2002). Expertise in White Collar Crime fraud investigations.

**ROBERT NORTH**, born New York, New York, November 12, 1950. *Education*: University of Bridgeport, Bridgeport, Connecticut (B.A. Broadcast Journalism, 1978). *Experience*: Formally a television journalist; WDHO-TV, Toledo, Ohio, 1978; government and political reporter for WKRC-TV, Cincinnati, Ohio, 1979; investigative reporter, WFLA-TV, Tampa, Florida, 1983; assistant news director, WJTV-TV, Jackson, Mississippi.

**JAMES ROSS**, born Beverly, Massachusetts, March 26, 1953. *Education:* Northeastern University, Boston Massachusetts, (B.A. 1976). Certified Fraud Examiner (CFE) credential earned 1999. *Experience:* Seven years in the Economic Crimes Division for Florida Attorney General Bob Butterworth, investigating cases against banks, insurance companies, publishing and funeral homes; eight years with The Tampa Tribune Capitol Bureau investigating government corruption, politics and organized crime. Early career includes investigative reporting assignments in Massachusetts, New Hampshire and Maine and an assistant editor position with a statewide business magazine. Investigative interests also includes integrating computer databases and other technological tools into individual investigations.

**ALFRED W. SCUDIERI**, born New York City, New York, December 29, 1946. *Education:* City University of New York, 1968; Defense Department Language Institute, (Spanish) 1970; Former Special Agent of the Federal Bureau of Investigation (1964-1995); Supervisor of White Collar Crime/Fraud Unit in the Tampa office of the F.B.I. specializing in Bank Fraud,

6

Securities Fraud, Governmental Fraud, Civil Rights and Political Corruption Investigations. Federal Law Enforcement Officer of the Year (1992); ABC-TV *World News Tonight*" Investigative Unit (1995-1996).

**ROBERT D. ULMER**, born Jersey City, New Jersey, September 25, 1946. *Education:* Niagra University (BBA, Accounting, 1968); *Experience:* Staff Auditor, Price Waterhouse & Company, Buffalo, New York (1968-1969, 1972); Captain, United States Army (1969-1971); Former Special Agent, Federal Bureau of Investigation (1972-1996), FBI Headquarters, Washington, DC, Supervisor, budget Section and Organized Crime Section (1987-1990); Field Supervisor of Organized Crime and Drug Unit, FBI, Buffalo, New York; Criminal Investigator, Office of the State Attorney, 6th Judicial Circuit of Florida, Clearwater, Florida (1997-2005); Vice President, Chase and Associates, Inc., Tampa, Florida, a Private Investigations firm (2005-2007); Certified Fraud Examiner (CFE), 1994-present.

Class Actions in which James, Hoyer, Newcomer, and Smiljanich, P.A.
Has Been Either Lead or Co-counsel:

*Lifsey v. Ross*, Civil Action No. 97-1832-CIV-T-23C, United States District Court, Middle District of Florida.

*Glenn A. Hawkins and Nedra J. Hawkins, On Behalf of Themselves and Others Similarly Situated vs. **Aid Association for Lutherans***, Civil Action No: 2:00CV1327, United States District Court, Eastern District of Wisconsin.

*Keith Snell and Teresa M. Snell, On Behalf of Themselves and All Others, Similarly Situated, vs **Allianz Life Insurance Company of North America, North American Life and Casualty Company and Fidelity Union Life Insurance Company***, Case No. 97-2784-RLE - Class Action, United States District Court, District of Minnesota.

*Suzette Moody, etc., vs. **American General Life & Accident Insurance Company***, et al., Case No. 97-1525, In the Court of Common Pleas, Lucas County, Ohio.

*Harry J. Manners, Jr., et al. vs. **American General Life Insurance Company and AGC Life Insurance Company***, Case No. 3-98-0266, United States District Court, Middle District of Tennessee, Nashville Division.

*Dale Bachman, Individually and On Behalf of a Class of Persons Similarly Situated, vs. **Equitable Life Assurance Society of the United States***, Civil Action No. 96-1225-CIV-T-24B, United States District Court, Middle District of Florida, Tampa Division.

*Brenda G. Elkins and Jerry Bedenbaugh, Individually and On Behalf of a Class of Persons Similarly Situated, vs. **Equitable Life Insurance Company of Iowa, Equitable of Iowa Companies**, and **Equitable American Insurance Company***, Civil Action No. 96-296-CIV-T-17B, United States District Court, Middle District of Florida, Tampa Division.

*Ruby M. Dunn, Phillip A. Sollami, Jr., Paula D. Wise, Eric D. Hagen, and Edward M. Abroms, Individually and on Behalf of All Others Similarly Situated, vs. **The Franklin Life Insurance Company***, Case No. 97-L-250, State of Illinois, In the Circuit Court of the Third Judicial Circuit, Madison County.

*Dale L. Baker, Sr. and Patricia A. Baker, Sheila D. Magofna, Howard G. Humberger, Patick W. Berteau and April L. Berteau, James A. Volkaman and Rebecca J. Volkkman, on Behalf of Themselves and All Others Similarly Situated, vs. **The Franklin Life Insurance Company***, Case No: 98-119-CIV-T-26B, United States District Court, Middle District of Florida, Tampa Division.

*In re: General American Life Insurance Company Sales Practices Litigation*, MDL Docket No. 4:97MDL 1179 CDP, United States District Court, Eastern District of Missouri.

*In re Great Southern Life Insurance Company Sales Practices Litigation*, Ginsberg Action: 3:98-CV-1249-X, McGraw Action: 3:98-CV-1617-X, Mann Action: 3:98-CV-1618-X, Massey Action: 3:98-CV-1619-X, In the United States District Court For the Northern District of Texas, Dallas Division.

*Lesa Benacquisto vs. IDS Life Insurance Company*, File Number DC CT 96-018477, State of Minnesota, County of Hennepin, District Court, Fourth Judicial District.

*George W. Snyder and Gail L. Wolcott v. Jackson National Life Insurance Company, and Robert Goldstein*, Case No. 00-1008, Division H, In the Circuit Court in and for Hillsborough County, Florida, Civil Division.

*Richard Duhaime, James W. Yoder, Donna M. Yoder, Theodore A. Peck, John Sullivan and Clarissa Sullivan, On Behalf of Themselves and All Others Similarly Situated, vs. John Hancock Mutual Life Insurance Company, John Hancock Variable Life Insurance Company, and John Hancock Distributors, Inc.*, Case No: 96-10706-RGS, United States District Court, District of Massachusetts.

*Robert Dean Ulmer, Michael B. Lunsford, Donald L. Yingling, vs. Life Insurance Company of North America (LINA), Connecticut General Corporation (CGC) and CIGNA Corporation (CIGNA)*, Case No. 8:00-CIV-665-T-24(E), United States District Court, Middle District of Florida, Tampa Division.

*Peggy Greenberg and Pamela Rossmann, Individually and on Behalf of All Others Similarly Situated vs. The Life Insurance Company of Virginia*, Case No. C-1-97-416, United States District Court, Southern District of Ohio, Western Division.

*Irwin Applebaum as Trustee for the Irwin Applebaum Revocable Trust, Selma Sadie Applebaum, Maryann Casey, Barbara Garing, Raymond Garing, Bettye J. O'Neal, and Harley Stuhr, On Behalf of Themselves and All Others Similarly Situated, vs. LifeUSA Insurance Company and Allianz Life Insurance Company of North America*, Civ. No. 8:00-CV-1045-T-17E, Class Action, United States District Court, Middle District of Florida, Tampa Division.

*Richard H. Blanke vs. Lincoln National Corporation , Security Connecticut Life Insurance Company, Lincoln National Life Insurance Company and Wayne W. Wolfe*, Civil Jury Case No: 0512048, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

*In re: Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation*, Case No: 99-MD-1309 (PAM/JGL) United States District Court, District of Minnesota.

*Horton et al. v. Metropolitan Life Insurance Company* , Case No. 93-1849-CIV-T-23A , in the United States District Court for the Middle District of Florida.

2

*In Re **Metropolitan Life Insurance Company** Sales Practices Litigation*, C.A. No: 96-0795, C.A. 96-0038, C.A. 95-1426, C.A. 96-0436, C.A. 96-0051, In the United States District Court, For the Western District of Pennsylvania.

*Paul A. Goshen, On Behalf of Himself and All Others Similarly Situated, vs.* **The Mutual Life Insurance Company of New York and MONY Life Insurance Company of America**, Index No. 95-600466, Supreme Court of the State of New York, County of New York.

*In re **New England Mutual Life Insurance** Company Sales Practices Litigation*, D. MASS. C.A. NO. 1:96-11534-REK, United States District Court For the District of Massachusetts.

*Annie Hirsh, Issac L. Hayes, and Sammie L. Epps, on Behalf of Themselves and All Others Similarly Situated, vs. **Physicians Mutual Insurance Company, and Physicians Life Insurance Company**,* Case No: 2:00-CV-39PG, In the United States District Court, Southern District of Mississippi, Hattiesburg Division.

*Jerry D. Grove, Leo Willick and Sidney Gilbert, on Behalf of Themselves and All Others Similarly Situated, vs. **Principal Mutual Life Insurance Company**,* Case No: 4-97-CV-90224, Class Action, In the United States District Court, For the Southern District of Iowa, Central Division.

*Eloise Bomber, On Behalf of Herself and All Others Similarly Situated vs. **Reliastar Life Insurance Company**,* Case No. 8:01-CV-907-T-27MSS, United States District Court, Middle District of Florida, Tampa Division.

*Randy W. Lee, Sandra F. Lee, Elba Kolster and Meyer Silverstein on Behalf of Themselves and All Others Similarly Situated, vs. **USLIFE Corporation**, the **Old Line Life Insurance Company of America, All American Life Insurance Company** and **The United States Life Insurance Company in the City of New York**,* Case No: 1:97CV-55-M, United States District Court, Western District of Kentucky.

*James Stock, et al. vs. **United Liberty Life Ins. Co.**,* Case No. CV00-06-117, In The Common Pleas Court, Butler County, Ohio.

*Thomas E. Rector, Fred Caroque and Antoinette M. Caroque On Behalf of Themselves and All Others Similarly Situated, vs. **The Western and Southern Life Insurance Company, and Western-Southern Life Assurance Company**,* Case No. 98-667-CIV-T-26B, Class Action, United States District Court Middle District of Florida, Tampa Division.

*Joseph F. Kreidler, et al., vs. **Western-Southern Life Assurance Co.**,* Case No. 95-CV-157, Court of Common Pleas, Erie County, Ohio.

3

*Scott Swope, et al. v. **The Thompson Corporation and West Group***, Case No. 19-C5-02-8564; First Judicial District Court, Dakota County, Minnesota.

*Alberta E. Richardson, et al. vs. **Carson Products Company and Johnson Products Co., Inc.***, Case No. 00-01713, Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

*Leola McNeil, et al. vs. **American General Life & Accident Insurance Company***, *et al.*, Case No. 3-99-1157, United States District Court, Middle District of Tennessee.

*James Williams, et al. vs. **United Insurance Company of America***, *et al.*, Case No. 01-920, Circuit Court of Jefferson County, Alabama, Bessemer Division.

*Glenda Carnegie, et al. vs. **Mutual Savings Life Insurance Company***, Case No. CV-99-S-3292-NE, United States District Court, Northern District of Alabama, Northeastern Division.

*In re: Industrial Life Insurance Litigation, MDL 1371 (Rosebud Montgomery, et al. vs. **Life Insurance Company of Georgia Industrial Life Insurance Litigation***, Case No. 1:99-CV-252 MMP, United States District Court, Northern District of Florida, Gainesville Division).

***In re: Riscorp Securities Litigation***, Case No. 96-2374-CIV-T-23A, Middle District of Florida.

*Andrew Taworski v. **The American Franklin Life Insurance Company, American General Equity Services Corporation, f/k/a Franklin Financial Services Corporation,*** Case No. 2002L0195, Seventh Judicial Circuit, Sangamon County, State of Illinois.

*Manuel Fernandez v. **American Express Company and American Express Publishing Corporation***, Case No. 01-0026381, Thirteenth Judicial Circuit, Hillsborough County, State of Florida.

*Sharon Hicks v. **Oxmoor House, Inc.***, Case No. CV034-752, Circuit Court of Jefferson County, Alabama.

***In re: Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation***, **(Kathi R. Levitov v. Sulzer Orthopedics, Inc. and Sulzer Medica, Ltd.)** Case No. 1:01-CV-9000, MDL Docket No. 1404, United States District Court, Northern District of Ohio, Eastern Division.

***In re: Baycol Products Litigation***, Case No. 01-2386, MDL No. 1431, United States District Court, District of Minnesota.

*Melissa Dukes and Thomas J. Dolan v. **Hewlett-Packard Company***, Case No. CV-2002-270, Circuit Court of Phillips County, Arkansas.

***In re Allstate Insurance Company Under Writing and Rating Practices Litigation***, Case Number MDL Docket No. 3:02-md-1457, United States District Court for the Middle District of Tennessee,

4

Nashville Division.

*Marissa Craft, Brigitte Thompson v.* **Sprint Corporation**, Case No. 4:02-cv-183-RH, United States District Court, Northern District of Florida, Tallahassee Division.

*Scott P. Swope v.* **The Thomson Corporation and West Group**, Case No. 19-C5-02-8564, State of Minnesota District Court, County of Dakota, First Judicial District.