UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| IN RE HANNAFORD BROS. CO. ] | |
|     CUSTOMER DATA SECURITY ] | MDL DOCKET NO. 2:08-MD-1954 |
|     BREACH LITIGATION ] | |

### DECISION AND ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION AND CERTIFICATION OF QUESTIONS TO THE MAINE SUPREME JUDICIAL COURT SITTING AS THE LAW COURT

On May 12, 2009, in a detailed Order, I granted a motion to dismiss the claims of all the plaintiffs but one.  The plaintiffs have asked me to reconsider that ruling and also to certify certain questions of Maine law to Maine's highest court for a definitive ruling on Maine law.  The defendant has opposed the motion and, in the alternative, asked me to certify another question.  The plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.  I will certify at least one question of Maine law to the Maine Supreme Judicial Court sitting as the Law Court and will delay entry of final judgment until I receive that Court's response.

### BACKGROUND

The details of the case are contained in my Order of May 12, 2009. I will not repeat them here.  After that ruling, the parties filed a stipulation that the one remaining plaintiff, Pamela LaMotte, has been fully reimbursed by her bank for any contested charges.  Stipulation (Docket No. 83).  Based upon the reasoning of my May 12 Order, that effectively ends the plaintiffs' case.

Nevertheless, the plaintiffs have moved to reconsider the decision and to certify questions of law to Maine's highest court regarding my rulings as to implied contract, confidential relationships and cognizable injury. The plaintiffs have asked that I stay further briefing on their motion to reconsider until I receive answers from the Maine Law Court. The defendant has opposed the certification of any questions and has asked that if I do certify any of the plaintiffs' questions, I also certify a question regarding the scope of the economic loss doctrine in Maine.

## DISCUSSION

### (A)  *Reconsideration*

Ordinarily, a motion for reconsideration is appropriate only if a moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the moving party can demonstrate that the original decision was based on a manifest error of law or was clearly unjust. United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citing Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)). The basis for the motion here is that, if I certify questions of Maine law to the Law Court and that Court answers them differently from how I answered them, there will be a change in the law that should lead me to vacate my ruling on the defendant's Motion to Dismiss. Since, as explained below, I conclude that it is appropriate for me to certify at least one question, I hereby **GRANT** the plaintiffs' request to stay further briefing on the Motion for Reconsideration pending the answer of the Maine Law Court.

It is, however, law of the case that Maine law governs this dispute, despite the plaintiffs' suggestion that an unfavorable answer from the Maine Law Court might prompt them to litigate their claims under other states' laws. Mot. for Reconsideration and Certification of Questions to the Maine Supreme Judicial Court at 5-6 (Docket No. 82). The plaintiffs have clearly and explicitly accepted that Maine law governs this multidistrict lawsuit and have waived any argument over choice of law orally at least twice. See Oral Argument Tr. 43:2-44:10, Apr. 1, 2009 (Docket No. 76); Oral Argument Tr. 10:23-11:2, Sept. 21, 2009. To the extent that any part of the motion to reconsider is based upon an argument that some other law applies, it is **DENIED**.

### (B) *Certification*

The parties agree that, under 4 M.R.S.A. § 57 and M. R. App. P. 25(a), this federal court may certify questions of substantive state law to the Supreme Judicial Court sitting as the Law Court if "there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause" and if "there are no clear controlling precedents in the decisions of the Supreme Judicial Court." M. R. App. P. 25(a); see also Brown v. Crown Equip. Corp., 501 F.3d 75, 78 (1st Cir. 2007) (certifying questions pursuant to 4 M.R.S.A. § 57). The First Circuit holds generally that certification is not appropriate if state law is "sufficiently clear" to allow a federal court to predict its course. Ropes & Gray LLP v. Jalbert, 544 F.3d 50, 53 (1st Cir. 2008). In addition, the Law Court will accept a certification only if there are no disputes as to material fact and if an answer from the Law Court "will, in at least one

alternative, be 'determinative of the cause'" and terminate the controversy. Hiram Ricker & Sons v. Students Int'l Meditation Soc., 342 A.2d 262, 264 (Me. 1975) (citing White v. Edgar, 320 A.2d 668, 674-75 n.10, 677 (Me. 1974)). Since my rulings in question were on a motion to dismiss, there are by definition no disputes of material fact: in ruling on that motion, I was required to assume that the plaintiffs' allegations are true.

The plaintiffs' certification requests as phrased, however, would have the Maine Law Court reviewing my rulings in an appellate fashion.[1] That is not the role of certification. In my assessment of the plaintiffs' Consolidated Class Action Complaint, I am required to follow the standards of Fed. R. Civ. P. 12(b)(6), as interpreted by Supreme Court decisions such as Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Any mistakes I may have made are for the United States Court of Appeals for the First Circuit to correct; indeed, federal pleading standards may well differ from Maine's. The purpose of certification, on the other hand, is to allow Maine's highest court to answer an uncertain question of Maine law so that it can remain in charge of the proper development and articulation of Maine's law, free of unwitting distortions by a federal court. Thus, I do not ask the

---

[1] For example, the plaintiffs ask that I certify the following question regarding confidential relations: "Does the Consolidated Complaint state a claim upon which relief may be granted for breach of a confidential relationship between Hannaford and the Representative Plaintiffs under which a jury would be permitted to find that Hannaford had an enforceable obligation to maintain the confidentiality of the Representative Plaintiffs' confidential credit and debit account access information and to notify the Representative Plaintiffs if this confidential information was stolen?" Mot. for Reconsideration at 10-11.

4

Maine court to review the correctness of my ruling, but rather, if it chooses to do so, to announce pertinent Maine law, which I will then apply.

The plaintiffs have asked me to certify four questions:

(1) Whether an implied contractual term—to protect account information—in the card user/retailer relationship can be limited to reasonable care;

(2) Whether, in providing their account information to retailers, consumer credit or debit card users thereby create a confidential relationship;

(3) Whether Maine law follows the Restatement (Second) of Torts to conclude that time and effort spent mitigating or averting harm from actionable conduct are alone sufficient to amount to cognizable injuries; and

(4) Whether the loss of such time and effort constitutes a "substantial" injury for the purposes of Maine's Unfair Trade Practices Act ("UPTA").

The defendant has asked me to certify a fifth question, regarding the scope of the economic loss doctrine.

I conclude that only one of these questions is appropriate for certification at this time. Whether time and effort spent mitigating or averting harm from actionable conduct (implied contract or tort) is alone sufficient to recover damages *is* uncertain under Maine law, and an answer to that question favorable to the defendant would end this entire matter. The scope of the economic loss doctrine is also uncertain under Maine law, but I cannot say that, if the Maine Law Court decides the issue of cognizable harm in the plaintiffs' favor, such that both an implied contract claim and a tort claim can

5

proceed, an answer from the Law Court regarding the economic loss doctrine favorable to Hannaford on the tort claim would be determinative of the entire matter.

### *(1)     Implied Contract*

In my May 12, 2009 Decision and Order, I held that a jury could find that the grocery purchase contracts at issue in this case include an implied term that merchants "will take reasonable measures to protect [account] information (which might include meeting industry standards)" because such a contractual provision of reasonable care is "absolutely necessary to effectuate the contract." Decision and Order on Def. Hannaford Bros. Co.'s Mot. to Dismiss at 10 (Docket No. 78). The plaintiffs argue that there "are no Maine cases in this or a similar factual context that address the ability of the Court to limit an implied term to a specified standard of care." Mot. for Reconsideration at 10. That may be true, but it is beside the point.

I based my implied contract ruling on Seashore Performing Arts Center, Inc. v. Town of Old Orchard Beach, 676 A.2d 482 (Me. 1996), which held that an unwritten provision will be implied in a contract only if "that provision must be absolutely necessary to effectuate the contract," id. at 485 (citing Top of the Track Assocs. v. Lewiston Raceways, Inc., 654 A.2d 1293, 1295 (Me. 1995)). Top of the Track Associates held that that a contractual term will only be implied if it "is not inconsistent with some express term of the contract and when there arises from the language of the contract itself, and circumstances in which it was entered into, an inference that it is absolutely necessary to

6

introduce the term to effectuate the intention of the parties." <u>Top of the Track Assocs.</u>, 654 A.2d at 1296 (citing 11 <u>Williston on Contracts</u> § 1295 (1968)). Given these clearly stated principles, the plaintiffs' argument that there are no Maine cases to guide my finding of an implied contractual term promising that a retailer will take reasonable measures to safeguard account information is unavailing. I concluded that to the extent that there is an implied contractual term regarding the protection of account information, it must be subject to a reasonable standard of care because otherwise the implied term is not "absolutely necessary" to effectuate the purchase contract between a consumer and a merchant. In other words, a higher standard of care might be reassuring to consumers, but it is not absolutely necessary to the contract. In those circumstances, I concluded that a jury could not find an implied contractual term requiring higher than ordinary care. I may have been wrong (I don't believe that I was), but the applicable law is not uncertain. Accordingly, the plaintiffs' first proposed question is not eligible for certification.

### *(2)   Confidential Relations*

In dismissing the claim for breach of confidential relations, I held that, given the facts that they alleged, the plaintiffs did not show the necessary disparity between the parties under Maine law to create a fiduciary or confidential relation. Decision and Order at 18-19. I based my ruling on an abundance of clearly applicable Law Court precedents. Under Maine law, confidential relations "arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which

naturally grows out of that confidence is possessed by the other." Leighton v. Fleet Bank, 634 A.2d 453, 458 (Me. 1993) (citing Ruebsamen v. Maddocks, 340 A.2d 31, 34-35 (Me. 1975)).  Under Leighton, to show a confidential relationship, a plaintiff must allege actual placing of trust and confidence, some disparity in the bargaining positions of the parties, and abuse of its position of trust by the dominant party.  Id.  In Diversified Foods, Inc. v. First Nat. Bank of Boston, 605 A.2d 609 (Me. 1992), the Law Court held that, even in the context of a bank and a borrower, the court would not find a confidential relation absent "diminished emotional or physical capacity or of the letting down of all guards and bars," which "defines disparity of position in the context of a confidential relation," id. at 615.  The Diversified Foods court also noted that Maine courts have traditionally considered it difficult to sustain the burden of showing that a confidential relation exists.  Id. (citing Ruebsamen, 340 A.2d at 35).  Under Leighton and Diversified Foods, it is sufficiently clear that, absent unusual circumstances, a Maine court would not find a confidential relationship between a bank issuing a debit or credit card and a consumer.  See, e.g., Stewart v. Machias Sav. Bank, 762 A.2d 44 (Me. 2000) (finding no confidential relation between a bank and customer without evidence of great disparity of position and influence between the parties); Brae Asset Fund, L.P. v. Adam, 661 A.2d 1137 (Me. 1995) (same).  It is not a stretch to conclude that the same holds true for a retailer accepting the card from a consumer.  There is no uncertainty of Maine law here.  As with implied

contract, if I have applied it incorrectly, that is for the First Circuit to correct, not for a certification motion.

### *(3) Cognizable Injury*

Under Maine law, damages that are speculative, remote, or not reasonably foreseeable may not be recovered. Michaud v. Steckino, 390 A.2d 524, 530 (Me. 1978). A defendant may be held liable for damages only if he or she was their proximate cause. See Niehoff v. Shankman & Assocs. Legal Ctr., P.A., 763 A.2d 121, 124 (Me. 2000) ("The same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty." (citation omitted)). Simply put, it is settled law that a plaintiff may not recover damages if the causal relation between a defendant's tortious act or a breach of contract and the harm suffered is "too attenuated." Stubbs v. Bartlett, 478 A.2d 690, 693 (Me. 1984). Moreover, to be recoverable, damages must be assigned a monetary value. Waxler v. Waxler, 699 A.2d 1161, 1166 (Me. 1997) (holding that absent evidence of the monetary value of the loss of a plaintiff's good credit and of his delay in obtaining financing, damages for the losses were speculative).

Here, I dismissed the claims of all the plaintiffs except Ms. LaMotte because the damages they claimed are too remote and not reasonably foreseeable. Decision and Order at 35.

The plaintiffs' claimed damages for temporary lack of access to funds or credit, the annoyance from cancelled hotel reservations, and the embarrassment of obtaining a family loan, I ruled, are speculative and

therefore unrecoverable. A jury could only guess at a possible monetary valuation for such losses, and damages may not be based on conjecture or surmise. Wood v. Bell, 902 A.2d 843, 851 (Me. 2006) (citing Michaud, 390 A.2d at 530)). Maine law is sufficiently clear on that issue.

Damages for overdraft fees or loan interest or for bank fees charged when customers changed bill-paying arrangements are unrecoverable because they are remote and not reasonably foreseeable. Damages for lost reward points are also not reasonably foreseeable, and damages for the inability to earn rewards points are too remote to be recoverable. Once again, Maine law is sufficiently clear.

The plaintiffs did not plead sufficient facts to show that fees they incurred in opening a new bank account, when the bank said that such a new account was unnecessary, or to purchase identity theft insurance premiums, when the stolen card data did not include personally identifying information, were reasonably foreseeable. They are therefore not recoverable damages. My rulings on these categories of damages rely directly on the Law Court precedents that I have cited. Once again, the plaintiffs may disagree with my conclusions, but they cannot seriously contend that Maine law is uncertain in regard to the recoverability of speculative damages. Accordingly, I will not certify a question to the Supreme Judicial Court relating to my rulings regarding the remoteness or unforeseeability of damages. See Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 18 (1st Cir. 1999) (holding

that certification is unnecessary in cases involving "straightforward application of unambiguous state case law").

The plaintiffs argue, however, that Maine law is uncertain as to whether their claimed damages for lost time and effort are recoverable. They point out that there is no controlling Maine Law Court precedent or, in fact, any Maine case on point. Moreover, the Restatement (Second) of Torts § 919 (1977) recognizes damages for time and effort spent mitigating or averting harm from tortious acts, and the Law Court in other contexts has found the Restatement persuasive on unsettled issues of law. See e.g., Chapman v. Rideout, 568 A.2d 829, 830 (Me. 1990) (adopting the Restatement formulation of negligent representation). Relying on the Restatement, the Massachusetts Appeals Court has held that such damages may be recovered in factual circumstances closely analogous to the plaintiffs'. See Kuhn v. Capital One Financial Corp., No. 05-9-810, 2006 WL 3007931 (Mass. App. Ct. Oct. 23, 2006). The defendant Hannaford, for its part, cites cases from other jurisdictions reaching the opposite conclusion. Def. Hannaford Bros. Co.'s Mem. in Opp'n at 9 (Docket No. 88). The plaintiffs also argue that the monetary value of damages for lost time and effort is "either the value of [] time employed in alternative pursuits [*e.g.*, employment] or the cost that [one] would be required to expend in order to get someone else to do the work for him, whichever is less." Pls.' Reply to Def.'s Opp'n at 4 (Docket No. 93). Lacking Maine case law on this issue, I am convinced, given the split of foreign authority on this issue and the recognition of such damages in the Restatement, that Maine law is uncertain and that the

Law Court should be given the opportunity to determine whether such damages constitute a cognizable injury under Maine law. Accordingly, I will certify a question to the Supreme Judicial Court on this issue.

The plaintiffs also argue that I should certify the question whether damages for lost time and effort spent to mitigate or avert harm satisfy the "substantial injury" requirement for recovery under Maine's UPTA. State v. Weinschenk, 868 A.2d 200, 206 (Me. 2005) (citing Tungate v. MacLean-Stevens Studios, Inc., 714 A.2d 792, 797 (Me. 1998)). At oral argument, the plaintiffs' lawyer contended that developing federal case law suggests that lost time and effort constitute substantial injuries under the Federal Trade Commission Act ("FTCA") citing, for example, FTC v. Neovi, Inc., 598 F. Supp. 2d 1104 (S.D. Cal. 2008), which held that time and resources spent by customers to contest fraudulent checks and to protect their accounts constituted a substantial injury under the FTCA. Oral Argument Tr. 17:10-11, Sept. 21, 2009. The plaintiffs therefore maintain that, since Section 207 of Maine's UTPA directs Maine courts to be guided by "the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) [of the FTCA]" in determining whether a trade practice is unfair or deceptive, their damages should be recoverable under Maine law. See 5 M.R.S.A. § 207(1).

However, the plaintiffs are seeking damages under Section 213, which allows only those private litigants who have lost "money or property" to sue for actual damages, restitution, and equitable relief. Bartner v. Carter, 405 A.2d 194, 203 (Me. 1979). Unlike Maine's statute, the FTCA does not provide a

12

direct remedy for private litigants and does not include a provision analogous to Section 213.  Id. at 201; see also Hoglund v. Diamlerchrysler Corp., 102 F. Supp. 2d 30, 31 (D. Me. 2000) (noting that "there is no private right of action under the Federal act" and that the intent provision of Section 207 applies to that section rather than to the act generally).  Thus, as the Bartner court explained, "[F]ederal decisions afford uncertain guidance in the interpretation of the Maine private remedial provisions." 405 A.2d at 201.  In Bartner, the Law Court held that, "without the benefit of a strained interpretation," the plain language of Section 213 rules out recovery of "damages for personal injury, mental distress or loss of time." Id. at 203.  Bartner is a clear statement of Maine law that the plaintiffs cannot recover damages for lost time under the UTPA.  The plaintiffs' more recent federal precedents employ language that does not reflect that of Section 213, and I conclude that there is no ground for concluding that the Maine Law Court would reconsider its Bartner ruling because of them.  Moreover, the Law Court has held that a loss of money must be substantial to be recoverable under the UTPA.  See McKinnon v. Honeywell Intern., Inc., 977 A.2d 420, 427 (Me. 2009) (citing Suminski v. Me. Appliance Warehouse, Inc., 602 A.2d 1173, 1174-75 n.1 (Me.1992)).  Here, no allegations in the plaintiffs' Consolidated Complaint suggest that any plaintiff expended money to avert reasonably foreseeable harm or that that the plaintiffs' expenditures to avert remote or unforeseeable harm were substantial for UTPA purposes.  Accordingly, given clear Law Court precedents, I **DENY** the plaintiffs' motion to certify a question regarding substantial injury under the UTPA.

13

### *(4)* *Economic Loss Doctrine*

The contour and scope of the economic loss doctrine under Maine law have perplexed the federal courts in the District of Maine for some time. See Me. Rubber Int'l v. Envtl. Mgmt. Group, Inc., 298 F. Supp. 2d 133, 135 (D. Me. 2004) (lamenting the lack of guidance from the Law Court on economic loss doctrine since Oceanside at Pine Point Condo Owners' Association v. Peachtree Doors, Inc., 659 A.2d 267 (Me. 1995)). My colleague Judge Carter has aptly described the uncertainty that a district court faces whenever the economic loss doctrine figures in a case:

> [After] Oceanside, it is clear that the Law Court would indeed adopt the general rule barring recovery in negligence for purely economic loss despite its earlier decisions. It is unclear how far the Law Court will go in this direction. The Law Court may determine that the economic loss doctrine does not apply to bar a tort claim for the negligent rendering of services, as opposed to the negligent manufacturing or selling of a product. After the Law Court's decision in Oceanside, explicitly adopting, contrary to this Court's prediction in Inhabitants of Saco, the economic loss doctrine as to some tort claims, it is not clear whether the Law Court would continue to expand the scope of the economic loss doctrine's application in Maine or rule to restrict it.

Fireman's Fund Ins. Co. v. Childs, 52 F. Supp. 2d 139, 145 (D. Me. 1999). The clarity of the economic loss doctrine in Maine law has not measurably improved since Fireman's Fund.

In my May 12 ruling, I held that under Oceanside, Maine law does not give Hannaford a defense to tort recovery for economic damages resulting from negligence even though there was no personal injury or damage to physical property. Hannaford argues that the Oceanside court did not actually decide

14

the question at issue in this case. I will not repeat the uncertainty that I expressed in Maine Rubber and that Judge Carter expressed in Fireman's Fund. However, if the Maine Law Court's answer to the certified question on the cognizable harm issue favors the plaintiffs, the plaintiffs will have both a negligence claim and an implied contract claim. Hannaford argues that a favorable answer from the Maine Law Court on the scope of the economic loss doctrine would be "potentially determinative of all of the *tort* claims." Def.'s Mem. in Opp'n at 19 (emphasis added). It has not shown that an answer would dispose of the implied contract claim and thus be determinative of the cause.

    As a result, I propose to **CERTIFY** only the following question:

> Do time and effort alone, spent in a reasonable effort to avert reasonably foreseeable harm, constitute a cognizable injury under Maine common law?

I invite the parties to submit comments on or suggested reformulations of my proposed question by October 20, 2009. The parties may also submit additional briefing by that date on whether, given an answer from the Maine Law Court to this question favorable to the plaintiffs, an answer to a further question on the scope of the economic loss doctrine could, in one alternative, be determinative of this matter.[2]

---

[2] The plaintiffs' have waived objection to the certification of this question. Oral Argument Tr. 18:2-4, Sept. 21, 2009.

**CONCLUSION**

For the reasons stated above, I **GRANT** the plaintiffs' request to stay further briefing on the Motion for Reconsideration until the Maine Law Court has answered the questions that I certify. I **DENY** any implicit request by the plaintiffs that they be allowed to plead other states' laws if they are unsuccessful under Maine law. I **DENY** the plaintiffs' motion to certify questions regarding implied contract, confidential relations, and cognizable injury under the UTPA. I **GRANT** the plaintiffs' motion to certify a question regarding recoverability of damages at common law for time and effort lost in the effort to avert harm.

**SO ORDERED**.

**DATED THIS 5TH DAY OF OCTOBER, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**