UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

In Re  HANNAFORD BROS. CO.  )
       CUSTOMER DATA SECURITY  )  MDL Docket No. 2:08-MD-1954-DBH
       BREACH LITIGATION  )  ALL CASES

**DEFENDANT HANNAFORD BROS. CO.'S SUPPLEMENTAL BRIEF REGARDING CERTIFIED QUESTIONS**

Pursuant to the Court's Decision and Order on Plantiffs' Motion for Reconsideration and Certification of Questions to the Maine Supreme Judicial Court Sitting As the Law Court, dated October 5, 2009 ("Certification Decision" cited herein as "Op."), Hannaford Bros. Co. ("Hannaford") submits this supplemental brief concerning the questions to be certified to the Law Court.  Hannaford suggests that the certified question read:

**Under Maine law, can a merchant be liable in negligence for a plaintiff's use of time and effort to remove a fraudulent charge from his or her credit card or debit card account, in the absence of any physical harm, identity theft, loss of earnings or out-of-pocket expense to remove the charge?**

Hannaford also addresses the reasons that the economic loss doctrine question is certifiable.  In addition, Hannaford respectfully requests that the Court clarify its reference to choice of law in the Certification Decision to reflect the fact that Hannaford has never been asked to take a position and has not taken a position on which state's law or which states' laws would apply at any stage, other than with respect to the motion to dismiss.

**I.  The Court Should Certify the Question of the Economic Loss Doctrine Because It Is Potentially Determinative of the Cause.**

The Court noted that the precise contours of the economic loss doctrine under Maine law "have perplexed the federal courts in the District of Maine for some time."  (Op. at 14).  As the Court also correctly noted, no party objected to certification of a question on that point.  (*Id.* at 15 n.2).  The Court declined certification, however, on the ground that an answer to the question

would be determinative of the tort claims only, but could not "dispose of the implied contract claim and thus be determinative of the cause." (*Id.* at 15).

The Court correctly determined that a question cannot be certified unless one alternative answer to it can dispose of the entire civil action. Hannaford contends, however, that even if the Law Court were to rule the use of time and effort alone is potentially cognizable harm in negligence, it would rule such harm is not cognizable in contract. If the Law Court so ruled, then application of the economic loss doctrine to Plaintiffs' negligence claims would be determinative of the cause. The Court's implicit assumption that the Law Court must find such harm cognizable in contract if it finds it cognizable in tort is, at a minimum, not necessarily correct. And so long as it is not necessarily correct, the possibility of differing answers in contract and tort suffices to make the economic loss doctrine potentially determinative of this action.

Plaintiffs in fact offered no basis for determining that the use of time and effort alone is cognizable harm in contract. Plaintiffs argued, and the Court agreed, that Section 919 of the Restatement (Second) of Torts and an unpublished decision referencing that section, *Kuhn v. Capital One Fin. Corp.*, 2006 WL 3007931 (Mass. App. Ct. Oct. 23, 2006), render Maine law uncertain on the question. (*See* Op. at 11-12). Section 919 provides that certain attempts at mitigation or avoidance of harm can be compensable in tort: "one who has already suffered injury by the tort of another is entitled to recover for expenditures reasonably made or harm suffered in a reasonable effort to avert further harm." *Restatement (Second) of Torts* § 919(2) (1979). The question to be certified is whether the Restatement's reference to "expenditures reasonably made or harm suffered" applies to the expenditure of time and effort alone in a negligence case. Hannaford contends that it does not. But even if Section 919 permits such recovery, it is a principle of recovery in *tort*, not in contract. Regardless whether Section 919

creates any uncertainty about Maine's law of negligence, it does not suggest that Maine *contract* law recognizes this type of harm.[1]

Indeed, there is no principle of recovery in contract that suggests a plaintiff can recover for the expenditure of time and effort alone. Quite the contrary. The efforts-at-mitigation principle that applies in contract is set forth in *Restatement (Second) of Contracts* § 347, cmt. c (1981), and it is materially different from Section 919. Section 347 contains no broad reference to "expenditures reasonably made or harm suffered"; rather, it provides only for the recovery of "*costs* incurred in a reasonable effort, whether successful or not, to avoid loss." *Restatement (Second) of Contracts* § 347, cmt. c (emphasis added). Assuming for the sake of argument that Section 919's discussion of efforts at mitigation allows recovery in a negligence case for the expenditure of time and effort alone in the absence of other loss, that principle would have no application to a contract claim, since expenditures of time and effort alone are not "costs."

Moreover, as a general matter, contract recovery is defined more narrowly than tort recovery.[2] Even under the Restatement, the requirement of foreseeability in contract "is a more

---

[1] Similarly, in the *Kuhn* case, the court of appeals' rationale for reversing summary judgment went only to the trial court's basis for summary judgment on certain tort claims, not its basis for granting summary judgment on the contract claims. The trial court had granted summary judgment on the tort claims for lack of evidence that the theft of the plaintiff's information occurred at Capital One. *See Kuhn v. Capital One Fin. Corp.*, 2004 WL 3090707, at *4-5 (Mass. Super. Nov. 30, 2004). The court of appeals reversed because although the plaintiff's proof on that point was slender, it was enough of a "toehold" to survive summary judgment, even though that toehold "may very well disappear through later discovery." *Kuhn*, 2006 WL 3007931, at *3 ("We conclude that there is a genuine issue of material disputed fact about whether Capital One is the source of the breach."). As to the contract claims, however, the trial court granted summary judgment on a different basis, which the court of appeals said nothing to disturb. The trial court granted summary judgment on the contract claim, because Capital One made no promise to prevent theft of the plaintiff's identity with regard to accounts other than her Capital One account and agreed to protect her against liability for fraudulent charges to her Capital One account only; the plaintiff's allegation that Capital One failed to protect her against identity theft and fraudulent charges to other accounts simply did not allege a breach of any promise that Capital One made to her. *See Kuhn*, 2004 WL 3090707 at *3-4 ("The Customer Agreement, read together with the Privacy Notice, openly acknowledges the possibility of identity theft and makes no guarantees against its occurrence. . . . Capital One's actions – shutting down her account and giving her prompt notice – satisfied its obligations set out in the Privacy Notice and Customer Agreement.") The court of appeals said nothing to disturb that reasoning. Hence, nothing suggests the court of appeals expected a contract claim to be resurrected on remand, nor that its reference to Section 919 would bear on a contract claim.

[2] The Court's citation to *Niehoff* for the principle that the rules of causation are the same in tort and contract, (*see* Op. at 9), is not to the contrary. *Niehoff* and like cases are but-for causation cases and stand solely for the

severe limitation of liability than is the requirement of substantial or 'proximate' cause in the case of an action in tort." [3] *Restatement (Second) of Contracts* § 351, cmt. a. In fact, a court can prohibit recovery of a particular loss in contract if the court determines it would be unjust to put the risk of that loss on the defendant: "One such circumstance is an extreme disproportion between the loss and the price charged by the party whose liability for that loss is in question. The fact that the price is relatively small suggests that it was not intended to cover the risk of such liability." *Id.* at cmt. f. Here, Plaintiffs do not allege that they paid anything to Hannaford for the right to use an electronic payment card, and any risk of having to correct a fraudulent charge is not foreseeable in the contract sense nor allocable to Hannaford.

For the foregoing reasons, there is no uncertainty under Maine law over whether the use of time and effort alone is compensable in contract.[4] For purposes of determining whether the economic loss doctrine question should be certified, however, the question is far more narrow: might the Law Court determine the use of time and effort is not compensable harm in contract even if it is in tort? Based on the credible grounds set forth above, it certainly is at least possible that the Law Court so would conclude. And if it did, an answer to the economic loss doctrine question in Hannaford's favor would dispose of the sole remaining claim in tort, and therefore would be determinative of the entire action.

---

proposition that but-for causation is required just as much in contract as it is in tort. *See Niehoff v. Shankman & Assocs. Lgl. Ctr., P.A.*, 763 A.2d 121, 123 (Me. 2000) (plaintiff claiming attorney negligently failed to plead an ERISA claim "failed to show he would have recovered had [defendant lawyer] pled a claim under ERISA"); *Corey v. Norman, Hanson & DeTroy*, 742 A.2d 933, 940 (Me. 1999) (plaintiff failed to establish that defendant law firm's negligence "resulted in the divorce judgment being less favorable to her"); *Steeves v. Bernstein Shur Sawyer & Nelson, P.C.*, 718 A.2d 186, 194 (Me. 1998) (plaintiff generated sufficient evidence of law firm's breach of duty but "fail[ed] . . . to generate anything beyond speculation as to how she was damaged").

[3] Maine has never expressly adopted the more liberal formulation of contract foreseeability set forth in the Restatement and continues to cite the strict formulation of the *Hadley v. Baxendale* rule, namely that special circumstances giving rise to consequential damages "were communicated by the plaintiff to the defendant and were thus in the contemplation of both parties at the time of making the contract." *Williams v. Ubaldo*, 670 A.2d 913, 918 (Me. 1996). That, of course, makes it all the more true as a matter of Maine law that contract foreseeability is a narrower concept than tort proximate cause.

[4] Accordingly, as noted in Section II below, no question should be certified regarding any contract claim.

Accordingly, the Court should certify to the Law Court the economic loss doctrine question set forth in Hannaford's Brief in Opposition to Plaintiffs' Motion for Reconsideration or Certification:

**Under Maine law, in the absence of physical harm to person or property, and in the absence of misrepresentation, can a defendant be liable in negligence for purely economic harm to a plaintiff?**

II.     **The Court Should Clarify the Cognizable Harm Question to Account for Potentially Relevant Distinctions:  Tort vs. Contract, Negligence vs. Intentional Tort, De Minimis vs. Substantial Harms, and Mitigation/Avoidance vs. Consequential Harm**

The Court appropriately framed its proposed certified question to invite a pronouncement of Maine law generally rather than an appellate review of this Court's decision on the Motion to Dismiss.  And the Court rightly noted that the Law Court must take as given this Court's construction of the Complaint, as that construction involves the application of federal pleading standards, not any question of Maine substantive law.  (*See* Op. at 4 & n.1).  The constraints established by the Court's construction of the Complaint, however, should be spelled out more specifically, because the generality of the question in its proposed form potentially invites the Law Court to construe the Complaint in order to provide a factual background for any pronouncement it might make on Maine law.  This potential creates the risk of a Law Court decision based on a construction of the Complaint at odds within this Court's construction.  Hannaford suggests that the following question be certified instead:

**Under Maine law, can a merchant be liable in negligence for a plaintiff's use of time and effort to remove a fraudulent charge from his or her credit card or debit card account, in the absence of any physical harm, identity theft, loss of earnings or out-of-pocket expense to remove the charge?**

The proposed question differs from the Court's proposed cognizable-harm question in two ways: (1) it refers specifically to the claim of negligence, and (2) it refers specifically to the facts alleged by Plaintiffs.  Generally, the proposed reframing drafts a narrower question than the

5

Court's proposed broad question of general "common law." The rationale for these differences follows.

### A. The Certified Question Should Refer Specifically to the Claim of Negligence.

The rationale for a specific reference to negligence is twofold. First, as explained above, there is no basis for doubt over the compensability of time and effort alone under contract law, and therefore, no question of cognizable harm should be certified as to the contract claim. Second, there is no claim for intentional tort in this case, and the Law Court might apply a different cognizable-harm rule for negligence than it would apply for intentional tort. Accordingly, the question should not be framed generally in terms of Maine's "common law" or even its law of torts. A Law Court answer that the use of time and effort alone is cognizable harm, at that level of generality, would not provide useful guidance to the parties and the Court. Absent clarification whether, more specifically, such harm is cognizable in negligence, this Court could be left still to guess whether the claims in this case survive. Framed specifically with reference to Maine's negligence law, the question invites an answer that can be readily applied to this case.

### B. The Certified Question Should Refer Specifically to the Facts the Court Found to Be Properly Alleged.

As the Court noted, construction of the Complaint is the sole province of the federal courts in this case. (*See* Op. at 4 & n.1). The certified question should, so far as possible, articulate the potentially relevant facts the Court has found properly alleged or not properly alleged, so that the Law Court does not inadvertently provide an answer to the certified question based on a misinterpretation of the Complaint. Three specific facts are sufficiently relevant to the question the Court seeks guidance on to warrant specific reference in the certified question.

First, the Court should specifically note that the question involves only those Plaintiffs who had fraudulent charges made to their accounts. This is implicit in the Certification Decision's correct reference to time and effort spent "to avert reasonably foreseeable harm." (Op. at 15). The requirement that time and effort have been spent in an effort at mitigation or avoidance of harm suffered is an explicit condition of Section 919 (assuming, for the sake of argument only, Section 919 applies to these claims at all). Plaintiffs who had no fraudulent charges had no reasonably foreseeable harm to avert through the use of time and effort. For example, a Plaintiff who spent time and effort speaking to her bank to get a reissued card in the absence of a fraudulent charge would have been seeking to avert speculative future harm, in the absence of any evidence of actual theft and misuse of his or her information. (*See* Op. at 10 (fees to open a new account when the bank said that was unnecessary or to purchase identity theft insurance when no personally identifying information was stolen, are not reasonably foreseeable)). Similarly, a Plaintiff who claims to have spent time and effort as a result of a card cancellation – for example, in reconstituting prepayment relationships with a gym or an internet service provider – would be claiming a remote and unforeseeable harm, not seeking to avert the harm the Court has deemed reasonably foreseeable, namely a fraudulent charge collected from the plaintiff by his or her bank. (*See id.* ("bank fees charged when customers changed their bill-paying arrangements . . . are remote and not reasonably foreseeable")). The Court should spell out that the certified question involves only efforts to mitigate or avert the harm of a fraudulent charge.

Second, the proposed question above explicitly sets forth this Court's finding that no specific expenditure for the removal of a fraudulent charge has been properly alleged and that no Plaintiff was held liable for a fraudulent charge; that finding is implicit in the Court's proposed

7

use of the phrase "time and effort alone" in the certified question. The Law Court, however – less familiar with, or possibly disagreeing with the federal pleading standards – might not apply this proper construction of the Complaint. For example, the Law Court might construe the phrase "time and effort alone" to mean only the loss of free time rather than working time – i.e., the loss of time unaccompanied by any loss of wages – and assume wrongly that in this case the use of time and effort alone was accompanied by other harms, like certain out-of-pocket expenditures, or imposition of a fraudulent charge on the Plaintiff. Were the Law Court to answer the certified question under one of those faulty assumptions, it would mean at best a waste of time and resources for all concerned, and at worst a State intrusion on the federal prerogative to construe the Complaint.

Third, the proposed question specifically refers to the fact that no theft of personally-identifying information or risk of identity theft is properly alleged. The issue here is solely the use of time and effort to obtain the benefit of contractual zero-liability protection. An answer from the Law Court indicating generally that use of time and effort alone might be compensable, under an unspoken assumption that identity theft is at issue in this case, as it was in *Kuhn*, would be, again at best, a waste of resources.

   C. **The Certified Question Should Be Less Broad Than the Court's Proposed Question to Provide Necessary Context to the Law Court and to Assist This Court with Proper Application of Any Answer to the Certified Question.**

The Certification Decision highlights the delicate balance a federal court seeks to strike in certifying a question: the federal court seeks to defer to the state court in the pronouncement of state substantive common law, while protecting the federal court's twin prerogatives to decide the specific case before it and to interpret federal procedural law. Framing a very broad question invites the state court to pronounce general common law, while protecting the federal court's exclusive province to apply that law to the facts of the specific federal case. All common law

courts, however — and the Law Court is no exception — are accustomed to pronouncing abstract common-law principles in the context of deciding concrete cases. This Court's construction of the Complaint, under the governing federal pleading standards, defines the factual context that gives rise to the general question of common law to be certified. As a matter of comity, this Court should articulate the essential facts behind the certified question. Doing so is a courtesy to the Law Court that provides factual context for its declaration of common law, and also assists the Law Court in its efforts to defer to this Court's exclusive authority to construe the Complaint.

Finally, framing a more specific question may assist this Court in applying the Law Court's answer to the facts of this case. A singularly unhelpful answer to the certified question would be: "It depends," with no guidance as to what recovery depends on. For example, a determination that the use of time and effort alone is compensable if it is of sufficient degree, but de minimis expenditures are not recoverable, will be helpful only if that condition is explicitly stated. The same would be true of any Law Court determination that recovery depends on other factual circumstances unanticipated by the parties or the Court. Providing factual context for the question helps ensure that the answer will be given in a form that will allow this Court to identify and apply any relevant factual distinctions when applying the answer to the facts of this case.

### III. The Court Should Clarify Its Reference to Choice of Law on Page 3 of the Certification Decision.

The Court denied Plaintiffs' Motion to Reconsider the Court's ruling on Hannaford's Motion to Dismiss "[t]o the extent that any part of the motion to reconsider is based upon an argument that some other law applies." (Op. at 3). At this procedural juncture, that ruling certainly was correct. Each party has unequivocally waived the right to argue that the Motion to Dismiss should be decided under any law other than Maine's. Hannaford has not been asked to

waive, nor has it waived, its right to argue that some other state's law might apply at a later stage, if any claim survives the Motion to Dismiss.

In opposing Hannaford's Motion to Dismiss, Plaintiffs argued that the Court could not, at the Motion to Dismiss stage, rule out the possibility that Maine law might govern all Plaintiffs' claims. *See* Plaintiffs' Brief in Opposition to Hannaford's Motion to Dismiss (Docket No. 63) at 27 n.13. Plaintiffs contended they had at least a plausible argument that after discovery, the most-significant-contacts analysis would point to Maine law for all Plaintiffs' claims. At oral argument, the Court asked Hannaford's counsel whether the Motion to Dismiss could be decided exclusively under Maine law, as Plaintiffs contended it could. Counsel agreed that it could, foregoing any claim of error based on the Court's deciding the Motion to Dismiss exclusively under Maine law. (Tr. of Oral Argument on Motion to Dismiss at 13:15-19). Hannaford's counsel was not asked to take a position, and did not take a position, on what the outcome of the choice of law analysis might be after future discovery, should any claims survive the Motion to Dismiss. Indeed, Hannaford does not now have a position on what the outcome of the choice of law analysis would be after discovery.

Accordingly, while it certainly is law of the case that Maine law governs the decision on the Motion to Dismiss, and while Plaintiffs may have waived the right to argue for application of other states' law in the future,[5] Hannaford has not waived the right to challenge whether "Maine law governs this dispute," (Op. at 3), at all possible future stages. Hannaford respectfully requests that the Court clarify its Certification Decision on this point.

---

[5] Like Hannaford's counsel, Plaintiffs' counsel was asked to waive, and did waive, any claim of error based on the Court's deciding the Motion to Dismiss exclusively under Maine law. (Tr. of Oral Argument on Motion to Dismiss at 42:21 – 43:6). Each party conceded that if it lost the Motion to Dismiss under Maine law, it could not claim that it should have won the Motion to Dismiss under some other state's law; the practical difference between the parties is that the case would continue to a later stage if Hannaford lost the Motion to Dismiss, whereas the case would end if Plaintiffs lost the Motion to Dismiss.

## **CONCLUSION**

For all the foregoing reasons, the Court should certify to the Law Court the question concerning the economic loss doctrine set forth in Section I, *supra*, and should reframe the cognizable harm question as set forth in Section II, *supra*.


Dated: October 27, 2009

/s/ Clifford H. Ruprecht
William J. Kayatta, Jr., Esq.
Clifford H. Ruprecht, Esq.
Pierce Atwood LLP
One Monument Square
Portland, ME 04101
(207) 791-1100
wkayatta@pierceatwood.com
cruprecht@pierceatwood.com
*Counsel for Defendant Hannaford Bros. Co.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2009, I electronically filed Defendant Hannaford Bros. Co.'s Supplemental Brief Regarding Certified Questions to the Clerk of Court using the CM/ECF system which will cause an electronic notice to be sent to registered counsel of record.

/s/ Clifford H. Ruprecht
Clifford H. Ruprecht, Esq.
Pierce Atwood, LLP
One Monument Square
Portland, ME  04101
(207) 791-1100
cruprecht@pierceatwood.com

*Counsel for Defendant Hannaford Bros. Co.*