UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| IN RE HANNAFORD BROS. CO.   ] | |
|     CUSTOMER DATA SECURITY   ] | MDL DOCKET NO. 2:08-MD-1954 |
|     BREACH LITIGATION   ] | |

**DECISION AND ORDER REGARDING CHOICE OF LAW**

The defendant, Hannaford Bros. Co. ("Hannaford") has asked me to clarify, before I certify any questions to the Maine Supreme Judicial Court sitting as the Law Court, that Hannaford has conceded that Maine law governs this dispute *only* for the purposes of the Motion to Dismiss. I **DENY** the request.

**BACKGROUND**

At oral argument on the Motion to Dismiss, I told the parties at the outset that I wanted to discuss with them "what law or laws I should apply." Oral Argument Tr. 2:22, Apr. 1, 2009 (Docket Item 76). Choice-of-law issues were apparent, because the complaint spoke of transactions by Hannaford and Sweetbay customers in Florida, Maine, New York, New Hampshire, and Vermont. See, e.g., Class Action Compl. ¶ 17 (Docket Item 42). Hannaford's lawyer maintained that New York law clearly would *not* apply to any of the plaintiffs' claims because none of the plaintiffs had engaged in a transaction in New York, but that the state laws of Florida, Maine, New Hampshire, and Vermont were in play. Oral Argument Tr. 12:10-12, 15-16. He stated, however, that Hannaford had "not relied on any difference of law between Maine and . . . Florida, New Hampshire or Vermont, with only a few exceptions," and then narrowed those

"exceptions" to the argument that, unlike the other states, Maine law of emotional distress does not use impact analysis. Id. 12:22-25, 13:1-5. I then asked him the choice-of-law question directly, "So whose law do I apply?" Id. 13:6. He responded: "[I]t doesn't make any difference." Id. 13:7-8. I requested a more definitive answer: "Let me press you on it because when I come to rule on the motion, are you telling me I can simply use Maine law and there would be no error as far as the defense is concerned?" Id. 13:15-18. He agreed, id. 13:19, and went on to argue for the applicability of Maine law to all the issues in the case, see, e.g., id. 20:23-25 (economic loss doctrine). At no point did Hannaford even hint that it might raise choice-of-law arguments later. I then engaged the plaintiffs' lawyer on choice of law when it was his turn to argue. He assured me that applying the law of Maine would cover all other state law claims (with the exception that Maine's Unfair Trade Practices Act would not have extraterritorial effect, but since he agreed that he had not pleaded any other state's comparable statute, I could still limit my attention to Maine law). Id. 43:19 - 44:9. On rebuttal, Hannaford's lawyer continued to focus on Maine law. Id. 79:8-21.

  I had read the case law from the other states before oral argument, believing that I would have to determine the viability of the plaintiffs' claim in each state. But after oral argument, I set aside other states' laws and ruled on Hannaford's Motion to Dismiss by considering only Maine law. See Order and Decision on Def. Hannaford Bros. Co.'s Mot. to Dismiss at 7-8 (Docket Item 78). I would never have done so if the lawyers had not stipulated that Maine law controlled. And I would never have accepted a stipulation that Maine law controlled, but only with

2

respect to the Motion to Dismiss.  After all, a motion to dismiss tests whether a plaintiff has a claim upon which relief can be granted.  It would make little sense to conclude that a cause of action *did* exist under Maine law, and then have the defendant return and argue that a different state's law should govern.  Nor would it make sense to conclude that *no* cause of action existed, only to have the plaintiffs come back and insist that they could nevertheless proceed under another state's law.  Nor would it make sense to test a summary judgment motion later according to different substantive law.

The parties returned later for oral argument on the plaintiffs' Motion for Reconsideration of my Order, which largely granted Hannaford's Motion to Dismiss.  I expressed concern that the plaintiffs' legal memorandum had suggested that choice of law might still be open and told the plaintiffs' lawyer that I thought we had "address[ed] this head on at the oral argument" and expressed concern that if it remained open, it would destroy the ability to certify.  Oral Argument Tr. 10:16-22, Sept. 21, 2009 (Docket Item 100).  The plaintiffs' lawyer agreed that "with respect to these plaintiffs and the case we have pled, we pled it under Maine law.  They rise and fall under Maine law."  Id. 10:23 - 11:1.

In response to this statement by the plaintiffs' lawyer that Maine law governed *these* plaintiffs' claims, Hannaford's lawyer expressed concern that the plaintiffs' lawyer might try to bring in different plaintiffs later so as to argue that *other* states' laws applied.  He maintained that the plaintiffs' lawyer had not preserved choice-of-law arguments.  Id. 30:24 – 31:8, 33:1-14.  Given the posture of the case, Hannaford maintained that it "would be improper" for plaintiffs to

3

bring in a previously sidelined plaintiff in order to try a "claim under New York law or something like that," and requested "a very clear answer to the question" whether the plaintiffs were "potentially going to raise . . . claims . . . under the laws of other states." Id. at 31:20 - 32:1. I expressed surprise at the question because in a prior discussion with the plaintiffs' lawyer, I had "look[ed] at the question of whether the choice of law question had been decided in this lawsuit, and I thought he said it had." Id. 32:5-7. Hannaford's lawyer requested nevertheless that I press the plaintiff's lawyer for a clear statement regarding the applicability of Maine law "because . . . it affects the decision whether to certify a question over to the Law Court or not." Id. 33:11-14. I accepted the argument and in the rebuttal argument pressed the plaintiffs' lawyer to concede that he did not plan to raise claims under other states' laws. The plaintiffs' lawyer convinced me that I could assume that Maine law governed the lawsuit. See id. 35:2-9.

## DISCUSSION

The First Circuit says that the case law provides no "definitive point by which a litigant must raise a choice-of-law argument." Levin v. Dalva Bros., 459 F.3d 68, 73 (1st Cir. 2006). Rather, the point at which an argument will be deemed waived (if not made) depends a "case's own facts and equities." Id. In Levin, for example, the First Circuit held that a trial court properly considered choice-of-law arguments at trial, because the issue had never previously been "squarely presented by either party," the court had "not issued any ruling on the issue," and there was no evidence of intentional delay. Id.; see also Vasapolli v. Rostoff, 39 F.3d 27, 37 (1st Cir. 1994) ("A party who sits in silence, withholds

4

potentially relevant information, allows his opponent to configure the summary judgment record, and acquiesces in a particular choice of law does so at his peril."); Dartmouth Hitchcock Clinic v. United States Life Ins. Co., 2001 U.S. Dist. LEXIS 21874, at *7 (D.N.H. Dec. 31, 2001) (denying a motion to reconsider choice of law where plaintiffs advanced an argument "directly at odds with the position they advocated on summary judgment").

    Here, the parties addressed choice of law squarely in oral arguments on two occasions, five months apart. On neither occasion did Hannaford suggest that, outside the context of emotional distress (where it seemed to prefer Maine law), choice of law would matter to the defense. I was prepared before ruling on Hannaford's Motion to Dismiss to analyze actual conflicts between the substantive laws of Maine, Florida, New Hampshire, and Vermont and to assess any conflict using Maine's choice-of-law rules. See Levin, 459 F.3d at 74 (describing the procedure for assessing conflicts of law). I did not do so because both parties assured me that I could decide the motion under Maine law alone. Indeed, I asked Hannaford's lawyer to alert me to any significant conflicts of law possibly at play in the defendant's theory of the case. The answer to this question did not depend on further development of the record through discovery. It was a question of law alone. Then, in the second oral argument, Hannaford sought a commitment from the plaintiffs' lawyer that only Maine law applied. Hannaford's lawyer convinced me that the choice-of-law issue should be settled once and for all so that questions could be certified to the Law Court. If either party could now claim that a different state's law applies to the plaintiffs' claims, I doubt very much that the

Maine law questions would be ripe for certification, for I could not say that the Maine Law Court's answers would, "in one alternative, be determinative of the case." N. River Ins. Co. v. Snyder, 804 A.2d 399, 402 (Me. 2002) (quoting Dasha by Dasha v. Maine Med. Ctr., 665 A.2d 993, 995 (Me. 1995)).  For this lawsuit, I conclude that Hannaford has waived the issue of choice of law on the plaintiffs' substantive claims.[1]

Moreover, judicial estoppel precludes a party from "prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Zedner v. United States, 547 U.S. 489, 504 (2006) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).  Although there is no precise formula or test for when judicial estoppel applies, several factors inform the decision to apply it, including whether a party's later position is "clearly inconsistent with its earlier position," whether the party persuaded a court to accept its earlier position, and whether the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." United States v. Pakala, 568 F.3d 47, 59 (1st Cir. 2009) (quoting Zedner, 547 U.S. at 504).  The First Circuit does not require a court to find that the party advancing an inconsistent argument has benefited from the earlier position before applying judicial estoppel.  Thore v. Howe, 466 F.3d 173, 182 (1st Cir. 2006) (citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004)).

---

[1] I need not decide now whether there are issues that do not govern the substance of the claims, where another state's law might apply—e.g., confidentiality of records, privilege, etc.

Here, Hannaford's suggestion that it may later argue that this case turns on the law of a state other than Maine is inconsistent with the position that it argued before me in April and in September. I relied on Hannaford's arguments about choice of law in ruling on the Motion to Dismiss, in deciding to certify questions to the Maine Law Court, and in pressing the plaintiffs' lawyer to make a commitment that Maine law governs.

Accordingly, I consider it the law of the case that Maine substantive law governs this dispute.[2] The defendant's request is **DENIED**.

**SO ORDERED**.

**DATED THIS 16TH DAY OF NOVEMBER, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[2] Law of the case doctrine is not utterly inflexible, and in exceptional circumstances, I could be convinced to revisit the issue. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (U.S. 1988) ("As a rule courts should be loathe to [reconsider their prior rulings] so in the absence of extraordinary circumstances" (quoting Arizona v. California, 460 U.S. 605, 619 n.8 (1983)); see also United States v. Wallace, 573 F.3d 82, 89 (1st Cir. 2009) (noting that exceptional circumstances include "a change in controlling legal authority, significant new evidence not earlier obtainable with due diligence, or the prospect of a serious injustice"). Currently, there is no evidence of such exceptional circumstances.